Argued March 6, affirmed April 24, rehearing denied May 15, 1923.

## FEHL ET AL. *v.* CITY OF MEDFORD ET AL.

(215 Pac. 180.)

**Constitutional Law — Charter Amendment Providing for Sales to Satisfy Delinquent Assessments not Invalid as not Permitting Payment in Installments.**

1. City Charter of Medford, Chapter 14, Sections 140–143, providing for public sale of property to satisfy delinquent assessments, recognizes the right of land owners, who have brought assessments within the operation of the Bancroft Bonding Act or charter provisions allowing payment in installments to remain within such protection or voluntarily withdraw therefrom and place the assessments under the control of Chapter 14, and hence is not invalid as

compelling such withdrawal, thereby impairing the obligation of a contract, though it deals by compulsion with delinquent assessments and installments.

**Municipal Corporations—Charter Amendment Changing Remedy for Enforcing Payment of Delinquent Assessments Held not Invalid.**

2.  City Charter of Medford, Chapter 14, providing for public sale of property to satisfy delinquent assessments, is not invalid because it changes the remedy for enforcing payment of delinquent assessments theretofore brought within the operation of the Bancroft Bonding Act and charter provisions permitting payment in installments.

**Municipal Corporations—Charter Amendment Providing for Sales to Satisfy Delinquent Assessments Held not Void as Constituting Double Taxation Because not Requiring Use of Money Collected to Retire Bonds.**

3.  City Charter of Medford, Chapter 14, providing for the public sale of property to satisfy delinquent assessments, *held* not void as constituting double taxation because not requiring use of the money collected solely for the purpose of retiring outstanding refunding improvement bonds, in view of Sections 144, 146 and 151.

From Jackson: J. W. Hamilton, Judge.

In Banc.

Earl H. Fehl began this suit against the city of Medford, its recorder, treasurer, attorney, and mayor, to enjoin the delivery of a deed to the city for property owned by the plaintiff and sold to satisfy a delinquent assessment levied on the property for a public improvement made by the city. The decree of the Circuit Court was adverse to the plaintiff, and he appealed. Affirmed. Rehearing Denied.

For appellants there was a brief and oral argument by *Mr. B. F. Lindas.*

For respondents there was a brief and oral argument by *Mr. Fred W. Mears.*

HARRIS, J.—The record presented to us embraces only the pleadings, the findings of the court, and the decree. We understand from the record

that in April, 1918, the legal voters of Medford, in the exercise of the initiative, amended their municipal charter by adopting an amendment which is designated in the record as Chapter 14; that this amendment provides for the public sale of property by the city treasurer for the satisfaction of delinquent assessments; that if no person bids

"a sum sufficient to pay the delinquent and unpaid assessment thereon or installment thereof with interest, penalty and costs, the treasurer shall strike the same off to the city for the whole amount which he is required to collect by such sale. If any bidder to whom any property stricken off at such sale does not pay the assessment, interest and penalty and costs before ten o'clock a. m. of the day following the day of such sale, such property must then be resold, or if the assessment sale is closed be deemed to have been sold to the city and a certificate of sale shall be issued to the city therefor";

that the treasurer shall deliver to the purchaser a certificate of sale "specifying that the purchaser will be entitled to a deed three years from the date of sale, unless redemption thereof be made"; that redemption of property sold for a delinquent assessment may be made at any time within three years from the date of sale; that if property so sold is not redeemed within three years from the date of sale the treasurer is required on demand of the purchaser "and the surrender to him of the certificate of sale, (to) execute to such purchaser or his assigns, a deed for the property therein described," provided the purchaser proves by an affidavit that notice was given to the owner that a deed would be demanded and notwithstanding such notice the owner has failed to redeem the property within sixty days after the date of service. We also understand from the record that

the plaintiff owned land within the corporate limits of Medford; that an assessment was levied upon such property for an improvement made by the city; that the plaintiff failed to pay the assessment or some installment of it when it became due and that the property was at public sale, held in January, 1919, struck off to the city to satisfy such delinquent assessment or installment, and a certificate of sale was duly issued to the city; that on April 15, 1922, the city recorder in compliance with the requirements of Chapter 14 notified the plaintiff that the city held such certificate of sale and that if redemption "shall not be made" within sixty days from the date of service of the notice, "the city of Medford, Oregon, will demand a deed therefor from the city treasurer of said city of Medford"; and that after the service of such notice the plaintiff began this suit.

At an election held on January 9, 1917, two plans were submitted to the legal voters of Medford for refunding the city indebtedness. Each plan involved a proposed amendment to the charter. One of the proposed plans was known as the Hanson plan. At the election, the voters approved the Hanson plan. The object sought to be accomplished by the Hanson plan was to enable the city to refund all its bonded or other indebtedness incurred for paving, sewer and water-mains. At the time of the election, January 9, 1917, the bonded and warrant indebtedness of the city was considerable. Many if not most of the property owners, against whose property assessments had been levied to pay the expense of paving and of constructing sewers, had made application under the general statute, known as the Bancroft Bonding Act, to pay their assessments in installments as permitted by that state law, and had thus brought their prop-

erty under the operation and protection of the state law. The city charter contained provisions, modeled after the Bancroft Bonding Act, enabling the owner of abutting property to pay any assessment, levied on his property for the laying of water-mains, in installments, by filing an application with the city; and thereupon the city was authorized to issue bonds in an amount equal to such assessments. Many property owners against whose properties assessments had been levied for the payment of the expense of water-mains had made application under these provisions of the charter to pay such assessments in installments. Bonds had been issued by the city under the authority of the Bancroft Bonding Act, and bonds had likewise been issued under the water-main provisions of the city charter.

In 1916, the city authorities found the condition to be about as follows: Many of the owners who had not applied for the right to pay sewer and paving assessments in installments, as permitted by the Bancroft Bonding Act, had not paid their assessments; and these assessments were therefore delinquent. Many owners who had brought their properties under the protection of the Bancroft Bonding Act had failed to pay the installments as they became due and there were therefore many delinquent installments. Some owners who had not applied for the right to pay water-main assessments in installments, as permitted by the city charter, had failed to pay the assessments; and so, too, many who had secured the right to pay such assessments in installments had failed to pay the installments when due, with the result that such installments were delinquent; and consequently money for the payment of the outstanding indebtedness was not available, and so it became necessary in the years

1914, 1915 and 1916 to levy a sufficient general tax
to pay the annual interest due on the outstanding
bonds. In some instances the property, upon which
an assessment had been levied and remained unpaid,
was not worth as much as the amount of the assess-
ment; and in such case a forced sale to pay a delin-
quent assessment would have produced a deficit.

In order to remedy the conditions then existing
the Hanson plan was devised and subsequently
adopted by the voters. The Hanson plan attempted
by compulsion of law to withdraw from the operation
of the Bancroft Bonding Act all paving and sewer
assessments previously brought within the operation
of that act, and likewise to withdraw all existing
water-main assessments previously brought within
the operation of the water-main provisions of the
charter. In *Colby* v. *Medford,* 85 Or. 485 (167 Pac.
487), we reviewed the provisions of the Hanson plan
and held that the plan was invalid and could not be
enforced, for the reason that the Bancroft Bonding
Act is a statute of promises, involving as its pre-
dominant feature a promise to the property owner that
he can pay his assessment in specified installments
in consideration of his promise to waive his right to
challenge the regularity of the assessment, and that
therefore an application to pay under the Bancroft
Bonding Act created a contract the obligation of
which could not be impaired. See *New Jersey* v.
*Wilson,* 7 Cranch, 164 (3 L. Ed. 303, see, also, Rose's
U. S. Notes); *McGehee* v. *Mathis,* 71 U. S. (4 Wall.)
143 (18 L. Ed. 314); 1 Cooley on Taxation (3 ed.),
107 et seq.; Judson on Taxation (2 ed.), § 76;
10 R. C. L. 12; 27 Cyc. 726, 892 et seq. The charter
provisions governing water-main assessments were
modeled after the Bancroft Bonding Act, and con-

sequently the same protecting rule which applied to property brought under the Bancroft Bonding Act applied with equal force to property brought under such charter provisions. We also held that the Bancroft Bonding Act was a general statute applicable throughout the entire state, and that the municipality could not by the initiative repeal that act or render it inoperative, and that since the Hanson plan conflicted with the Bancroft Bonding Act the Hanson plan was invalid. We pointed out in *Colby* v. *Medford,* that if the Hanson plan were made optional and permissive instead of compulsory, it would be valid.

The procedure attempted to be outlined in the Hanson plan also contained some features which could not be sustained because of the fact that the power of legal voters of cities and towns is limited to the enactment of "local, special and municipal legislation."

After the decision rendered in *Colby* v. *Medford,* another plan, designated as Chapter 14, was devised and submitted to the voters and, in April, 1918, was adopted as a charter amendment. This is the charter amendment now under discussion. This amendment so adopted is in substance a remodeled form of the Hanson plan, but, as the defendants contend, with all the objectionable features of the original Hanson plan eliminated.

The first objection made by the plaintiff to the present form of Chapter 14 is the claim that it attempts by compulsion of law to withdraw sewer and paving assessments from the operation of the Bancroft Bonding Act and then to place them under the operation of Chapter 14; and that it likewise attempts to transfer water-main assessments from the protec-

tion of the water-main provisions of the charter and then to place them under the control of Chapter 14. The defendants contend that Chapter 14 is optional and permissive and is therefore valid, just as we stated in *Colby* v. *Medford,* it would be, if made optional and permissive.

Chapter 14 in its present form requires the council to "fix a date and a period of thirty (30) days preceding said date when, upon application therefor" unpaid assessments may be paid in whole or in part "notice whereof shall be given as herein provided." The amount of the assessment, principal and interest, remaining unpaid at the expiration of such date is taken as an integral and made payable after thirteen years from such date; during each of the first three years only the interest is required to be paid and during the last ten years the principal is payable in twenty installments of which one installment is due every six months. In brief, Chapter 14 takes the unpaid balance of any given assessment and makes that balance payable in twenty installments falling due over a period of thirteen years. Manifestly the plan relieved the pressure of the burden arising upon property, for it materially extended the time for paying an assessment.

All unpaid assessments "heretofore levied" for paving, sewers or water-mains, whether bonded under the state laws or under the city charter, may be extended and paid "as in this act provided upon application therefor" to be made in the prescribed form: Chapter 14, Sections 140 and 142. It is provided in Section 141 as follows:

"All unpaid assessments for which application shall not be made to pay in installments as in this act provided, shall be collected and the liens thereof

enforced in accordance with the provisions of the laws of Oregon and the charter and ordinances of said city applicable to said assessments and liens, as originally levied and made effective so far as the same shall not be delinquent at the time this act shall become effective; and so far as any such assessments or installments thereof are delinquent, or shall hereafter become delinquent, the same shall be collected and the liens thereof enforced in accordance with the provisions of this act for the collection of delinquent assessments and installments.''

It is commanded in Section 143 that all unpaid assessments shall be transferred to and entered upon a consolidated lien docket, and—

''Upon the expiration of the thirty (30) day period mentioned in section 140 of this act, the city recorder shall immediately ascertain and report to the city council any and all cases of assessments already bonded and concerning which no application shall be filed as in section 142 of this act provided, and shall specify as of the expiration of such thirty (30) day period the number and amount of the delinquent installments of such assessments and the delinquent interest on such assessments to the last annual installment payment date for such respective assessments, and shall also specify the number and amount of installments thereof not delinquent and the date from which interest thereon is payable. The city council thereupon, shall, by ordinance, direct the city recorder to correct such assessments upon the consolidated lien docket so that there shall appear thereon only such delinquent installments and delinquent interest and to retransfer to the appropriate bond lien docket the installments of such assessments not due, with interest at the rate chargeable to such assessments. The council shall further direct the recorder that, in the event any such installment or installments shall thereafter not be paid within the time fixed for such payment or payments, the amount of any such installment or installments, with interest

so becoming delinquent, shall thereupon be entered by the city recorder upon the consolidated lien docket. As to assessments already bonded and concerning which no application shall be filed as in section 142 of this act provided, installments thereof which shall become due and payable after the expiration of the thirty (30) day period mentioned in section 140 of this act, shall, prior to delinquency thereof, be payable upon the bond lien docket upon which the same was originally entered and in accordance with the application filed to pay such assessments in installments; but delinquent installments of such assessments, whether such delinquency occurred prior to or after the expiration of such thirty (30) day period, shall appear upon the consolidated lien docket and be collected and the liens thereof enforced as in this act provided.

"Upon making such entries in accordance with such ordinances, the city recorder, shall publish a notice stating that, in all cases of special assessments theretofore bonded under the Bancroft Act or the city charter and concerning which no application was filed as in section 142 of this act provided, the delinquent installments and interest of such assessments have been entered upon the consolidated lien docket and the installments not due have been transferred to and entered upon the bond lien docket upon which the same was originally entered, and that property owners concerned shall have the right for thirty (30) days from and after the publication of such notice to apply for the correction of any such entry upon either the consolidated lien docket or the bond lien docket and after the expiration of such period, such dockets shall be final and conclusive and such assessments appearing thereon shall be collected, as to the installments and interest not due in accordance with the application and the law and ordinances of the city under which such assessments were bonded, and as to such installments and interest already delinquent or which shall thereafter become delinquent the same

shall be collected and the liens thereof enforced as in this act provided.''

1. We agree with the defendants in their contention that Chapter 14 is permissive and optional. Chapter 14 recognizes the right of any owner, who has brought a paving or sewer assessment within the operation of the Bancroft Bonding Act, to remain within the protection of that act, or he may if he chooses voluntarily withdraw the assessment from the Bancroft Bonding Act and place it under the control of Chapter 14. The charter amendment now under discussion also recognizes the right of every owner who has brought a water-main assessment under the protection of the water-main provisions of the charter to remain under that protection, or if he wishes to withdraw from it and transfer the assessment to the control of Chapter 14. The charter amendment offers a strong inducement to every owner to make the change but no attempt is made to compel a change.

Chapter 14 undertakes by compulsion to deal with delinquent assessments not brought under the Bancroft Bonding Act or under the water-main charter provisions, and it also undertakes by compulsion to deal with delinquent installments due on assessments brought under the Bancroft Bonding Act or under the water-main provisions of the charter. It must be remembered that we pointed out in *Colby* v. *Medford*, 85 Or. 485, 526 (167 Pac. 487):

''If the owner permits an installment to become delinquent, the restraining hand of the statute is removed and the city is free to employ its own processes for the collection of whatever may be due.''

2. The next contention of the plaintiff is that Chapter 14 changed the remedy for enforcing pay-

ment of delinquencies, and that Chapter 14 is invalid because the city does not have the power to make such a change. If an assessment is levied upon property an obligation to pay that assessment is imposed upon the property. If the owner applies for permission to pay under the terms of the Bancroft Bonding Act he agrees that an obligation to pay exists and he recognizes the right of the city to compel the fulfillment of that obligation. When the city invokes whatever method may be provided for the enforcement of payment it is only availing itself of its remedy. In *Colby* v. *Medford,* 85 Or. 485, 526 (167 Pac. 487), we held that the property owner has no contractual right in the mode of compelling payment or in the consequences which by law follow in case of delinquency, and that therefore the mode and manner of compelling payment and the consequences of delinquency may be changed. See also 1 Page and Jones on Taxation by Assessment, § 170.

3. The last point attempted to be made by the plaintiff is:

"There is no provision in said law for the use of the money collected under it solely for the purpose of retiring bonds issued. Without this provision it constitutes double taxation and is unconstitutional and void."

In answer to this contention the defendants assert that the plaintiff is mistaken and that—

"The money collected from these improvement assessments is to be used solely for the purpose of paying off and retiring the outstanding refunding improvement bonds issued by the city of Medford in 1919. * * The city does not claim the right to use the money collected from the improvement assessments in any other way than to pay off and retire the outstanding refunding improvement bonds."

By Section 144, the city council is required to

"create a consolidated improvement district compromising all improvements of streets by paving and otherwise and the construction of sewers and water mains heretofore made where any special assessments remain unpaid and shall create a consolidated improvement fund comprising the same."

And by the terms of Section 151:

"All sums paid upon assessments shall be paid to the city treasurer and by him credited to the consolidated fund."

By Section 146 the city council is authorized to issue "Refunding Improvement Bonds" to take up and pay

"the total amount of the outstanding and unpaid Improvement Bonds and warrants of said city previously issued for street improvements by paving or otherwise, including sewers and water mains"; and each bond shall provide "that the principal sum therein named and the interest thereon shall be payable out of such consolidated improvement fund; and further that if said fund should prove insufficient to pay interest and principal of said bonds as the same matures, the full faith, credit and resources of said city are hereby pledged to provide for the prompt payment as the same matures of such interest and principal of such bonds."

The last point attempted to be made by plaintiff is without merit.

From the conclusions reached it follows that the decree must be and it is affirmed.

AFFIRMED.    REHEARING DENIED.