Demurrer to alternative writ overruled January 8; argued on the merits January 21; peremptory writ allowed February 13; rehearing denied March 12, 1935

STATE ex rel. FIRST NATIONAL BANK OF BAKER et al. *v.* MELVILLE et al.

(39 P. (2d) 1119, 41 P. (2d) 1071)

534

*John M. Pipes*, of Portland (I. H. Van Winkle, Attorney General, Willis S. Moore, Assistant Attorney General, Joseph, Haney & Veatch, of Portland, and Fred H. Paulus, of Salem, on the brief), for plaintiffs.

*E. R. Ringo*, of La Grande, for defendants.

PER CURIAM. It is the unanimous opinion of the court that the demurrer is not well taken and it will, therefore, be overruled. The defendant is given five days in which to answer and the plaintiff three days additional in which to move.

It is so ordered.

Argued on the merits January 21, 1935

## ON THE MERITS
(41 P. (2d) 1071)

This is a proceeding instituted in this court in which the petitioners, who describe themselves as owners of bonds issued by the city of La Grande, a municipal corporation, pursuant to the provisions of §§ 56-2001 to 56-2011, Oregon Code 1930 (Bancroft Bonding Act), pray for a writ of mandamus directed to the defendants who are the city commissioners of that municipality, commanding them to levy a tax upon all real property within the municipality in an amount sufficient to enable the city to discharge the defaulted interest upon the aforementioned bonds, and also to discharge installments of interest payable in January, 1936. An alternative writ was issued. The defendants then moved for

an order to strike from the writ four of its recitals. The motion was denied. Defendants next filed a demurrer "upon the following grounds: (1) that there is a defect of parties plaintiff, in that other bondholders, whose situation is similar to that of plaintiffs, are omitted; (2) that there is a defect of parties defendant, in that the city of La Grande and the county clerk and assessor of Union county are omitted; (3) that said writ does not state facts sufficient to constitute a cause of action". This demurrer was overruled, with leave granted to the defendants to re-argue it upon final hearing. The defendants then filed an answer which presented only one issue of fact; that is, ownership of the bonds described in the writ. Thereafter, testimony was taken and the cause now awaits final disposition.

ROSSMAN, J. According to the averments of the petition, admitted by the answer: the plaintiffs are several corporations and individuals; the city of La Grande is a municipal corporation, and the defendants comprise its city commission with power to levy taxes; between the dates of October 29, 1924, and July 1, 1931, the city issued the bonds described in the writ; all installments of principal and interest upon these bonds due June 1, 1932, and since, have not been paid; these bonds were issued pursuant to the provisions of §§ 56-2001 to 56-2011, Oregon Code 1930; the plaintiffs have demanded from the city payment of all overdue interest; and the assessed valuation of the city in the year 1933 was $4,654,162. The writ further states that the plaintiffs own a portion of the aforementioned bonds, that the defendants have failed to make a tax levy or otherwise provide funds for the payment of the unpaid interest, and that they have likewise failed to make provision for the payment of the interest which

will become due in January, 1936. According to the petition "the amount required for such purpose is the sum of $52,666.89". Although it appears from the writ that some of the bonds owned by the plaintiffs are in default, the writ states that plaintiffs "appreciating the financial difficulties of the city of La Grande and the general depression that prevails in Oregon and throughout the country, and not wishing to inflict upon the said city undue hardship, are not asking in this petition for any levy of taxes to pay the principal of said bonds that are defaulted and about to be defaulted". We now quote from the answer: "Defendants admit that they have failed to make a tax levy sufficient to provide the sum of $52,666.89, but allege that to do so would require a levy of more than 10 mills on the dollar of the 1934 assessed valuation of taxable property in said city." It alleges that the defendants appointed three qualified freeholder electors of the city to serve with them as the budget committee, and that a full itemized estimate was prepared, published and later adopted. We shall not review other recitals of the writ and the answer because we deem them unnecessary to a consideration of the contentions advanced by the parties. As already indicated, the only issue of fact presented is the ownership of the bonds described in the writ. When the cause was called for trial, counsel for the respective parties stipulated "that the plaintiffs are the owners of the bonds described in the complaint".

We believe that well-settled principles of law sustain our order previously entered which overruled the defendants' motion directed against portions of the writ, and our other order which overruled the demurrer so far as the demurrer was based upon the first two contentions mentioned in it. Hence, we shall not

pause to state herein our reasons, but shall pass on to a consideration of the third contention mentioned in the demurrer and to a consideration of the contentions which the parties presented after the close of the case.

Article XI, § 5, Oregon Constitution, provides: "Acts of legislative assembly incorporating towns and cities shall restrict their powers of taxation, borrowing money, contracting debts, and loaning their credit." Chapter 6 of the charter of the city of La Grande provides: "The commission of the city of La Grande has full power and authority within the city of La Grande: Section 1. To levy taxes for general municipal purposes not to exceed 10 mills on the dollar per annum upon all property both real and personal which is taxable by law for state and county purposes. Section 2. To levy a special tax not exceeding 10 mills on the dollar per annum upon all the property assessed by authority of Section 1 for any specific object, including special road taxes, sinking fund tax, interest fund tax, library tax or any other specific purpose within the powers of this municipal corporation, including the payment of any debt, but the ordinance providing therefor must specify the object and purpose thereof. Section 3. To provide for the issuance of negotiable coupon bonds of the city for any specific purpose and to designate the manner and time for the payment thereof and the interest thereon." Section 10a grants to the commission authority to provide for street improvements and to assess the cost thereof to the property benefited. It further provides that any owner of property against which an assessment in the sum of $25 or more has been levied may file an application to pay the assessments in 10 annual installments and then outlines a procedure to be pursued by the commission for the issuance of bonds to

pay the portion of the cost of the improvements assessed against the applicants. This procedure is substantially similar to the procedure outlined in the aforementioned sections of our laws. It contains, however, the following provision: "No obligation incurred by the city of La Grande by virtue of this section of the charter shall be deemed or taken to be within or any part of the limitation of this charter as to the indebtedness of the city of La Grande, and no obligation which is to be paid only out of the property assessed, incurred under this section or bonds issued therefor which are to be paid only out of the property assessed, either principal or interest, shall be paid out of the general fund of the city or be or become a charge or liability against the city which the city may pay out of the general fund or by general taxation."

■ As we have seen, the writ states, and the answer admits, that the bonds involved in this proceeding were issued pursuant to the provisions of §§ 56-2001 to 56-2011, Oregon Code 1930 (Bancroft Bonding Act). Hence, the provisions of Chapter 6, Section 10a of the city charter, have no application to these bonds. Bonds issued pursuant to the provisions of the Bancroft Bonding Act are the general obligation of the municipality: *Colby v. City of Medford,* 85 Or. 485 (167 P. 487), and *Ladd v. Gambell,* 35 Or. 393 (59 P. 113). The defendants contend, however, that unless the power to tax is expressly granted to a municipality it does not possess it, and further urge that a power to contract a debt does not imply a power to levy a tax to pay it. In support of these contentions, defendants cite *Board of Com'rs of Grand County v. King,* 67 Fed. 202. These contentions are germane to the controversy before us because §§ 56-2001 to 56-2011, Oregon Code 1930, do not expressly state that the city is

empowered to levy a tax for the payment of the issued bonds. The decision just cited disposed of a petition for a peremptory mandamus to compel a board of county commissioners to levy a tax so that it could pay a judgment held by the petitioners against the county. The answer averred that the county was "practically insolvent" and that the board of commissioners believed it inexpedient to levy, and impossible to collect, a greater tax than the one actually levied. A Colorado statute gave the county board an option to pay any judgment rendered against it by the levy of a tax or by a warrant drawn upon the county treasury. The court held that it could not lawfully deprive the board of its right to exercise this option by directing it to levy a tax and reversed the judgment of the lower court, which had issued the writ. In rendering its decision the court declared: "A county may lawfully contract debts which it has no power to levy a tax to pay." This is the language upon which defendants rely. In *United States v. New Orleans,* 98 U. S. 381 (25 L. Ed. 225), Mr. Justice Field, referring to municipal corporations, stated:

"When such a corporation is created, the power of taxation is vested in it as an essential attribute, for all the purposes of its existence, unless its exercise be in express terms prohibited. For the accomplishment of those purposes, its authorities, however limited the corporation, must have the power to raise money and control its expenditure."

Decisions of greater application to the controversy before us than the one upon which defendants rely are *United States v. New Orleans,* supra, and *Quincy v. Jackson,* 113 U. S. 332 (5 S. Ct. 544, 28 L. Ed. 1001). In the latter case the court affirmed an order which directed the issuance of a writ of mandamus against

the officials of the city of Quincy, commanding them to levy a tax for the payment of a judgment incurred against the city upon a stock subscription made pursuant to legislative authority. The charter of the city limited the tax rate for general expenses to 50 cents on each one hundred dollars of assessed value of property. The court held that the tax limitation ''related to debts and expenses incurred for ordinary municipal purposes, and not to indebtedness arising from railroad subscriptions, the authority to make which is not implied from any grant of municipal power, but must be expressly conferred by statute''. We quote further from the decision the following:

''In giving authority to incur obligations for such extraordinary indebtedness, the legislature did not restrict its corporate authorities to the limit of taxation provided for ordinary debts and expenses. In Loan Association v. Topeka, 20 Wall, 655, 660, the court, after observing that the validity of a contract, which can only be fulfilled by a resort to taxation, depends on the power to levy the tax for that purpose, said: 'It is, therefore, to be inferred that, when the legislature of the state authorizes a county or city to contract a debt by bond, it intends to authorize it to levy such taxes as are necessary to pay the debt, unless there is in the act itself, or in some general statute, a limitation upon the power of taxation which repels such an inference.' So in United States v. New Orleans, 98 U. S. 381, 393: 'When authority to borrow money or incur an obligation, in order to execute a public work, is conferred upon a municipal corporation, the power to levy a tax for its payment, or the discharge of the obligation, accompanies it; and this too, without any special mention that such power is granted. This arises from the fact that such corporations seldom possess—so seldom, indeed, as to be exceptional—any means to discharge their pecuniary obligations except by taxation.' The same question arose in Ralls County v. United States, 105 U. S. 733, 735, where it was said:

'It must be considered as settled in this court, that when authority is granted by the legislative branch of the government to a municipality, or a subdivision of a state, to contract an extraordinary debt by the issue of negotiable securities, the power to levy taxes sufficient to meet at maturity the obligations to be incurred is conclusively implied, unless the law which confers the authority, or some general law in force at the time, clearly manifests a contrary legislative intention.' Again: 'If what the law requires to be done can only be done through taxation, then taxation is authorized to the extent that may be needed, unless it is otherwise expressly declared. The power to tax in such cases is not an implied power, but a duty growing out of the power to contract. The one power is as much express as the other.' * * * These decisions cover the present case; for, in the first place, neither the act of 1869 from which the city derived authority to issue negotiable bonds in payment of its subscription, nor any general law of the state, forbids expressly or by necessary implication, taxation to the extent necessary to meet the obligations thus incurred; and, in the second place, the limitation imposed by the city's charter upon its power of taxation had reference to its ordinary municipal debts and expenses.''

In *Quincy v. Jackson,* supra, as well as in the three decisions reviewed in the above quotations, the indebtedness with which the court was concerned arose out of bond issues. The rule is well settled in the federal courts that when a municipality has been granted authority to issue bonds and thus becomes indebted such authority carries with it power to employ the means ordinarily resorted to by the municipality for the discharge of its indebtedness, unless the legislation, which authorizes the municipality to incur the debt, rebuts the implication. The federal decisions are cited in McQuillin, Municipal Corporations (2d Ed.) § 2523 footnote 56; see also Dillon, Municipal Corporations

(5th Ed.) § 1377 footnote 1. Many of the state courts also find in the power to become indebted power to tax for the discharge of the debt. The cases are cited in McQuillan, Municipal Corporations (2d Ed.) § 2523 footnote 61 to 64, Dillon, Municipal Corporations (5th Ed.) § 1380 footnote 1, and in the footnotes at page 1286, 44 C. J. Municipal Corporations. In *Avery v. Job*, 25 Or. 512 ( 36 P. 293), we adopted the reasoning of the federal courts and held that the power to incur a debt includes the power to levy taxes for the discharge of the debt.

■ The Bancroft Bonding Act does not state that the cities shall not levy taxes for the discharge of the debts which it authorizes the cities to incur. To hold that this legislation, which has been in effect since 1893, and under the provisions of which many cities have acted, confers no power to tax would be to draw a conclusion at variance with the many decisions to which we have already drawn attention. In our opinion they are well reasoned. It seems to us that such a conclusion would also be at variance with the plain intendments of the act, as we shall now endeavor to show. When the state authorized the city to issue the bonds it manifestly intended that the city should pay the principal and interest promptly when due. The statute granting authority to the city to issue the bonds provides (§ 56-2004) :

"* * * such bonds shall, by the terms thereof, mature in ten years from the date thereof, and be payable in gold coin of the United States, and bear interest not to exceed six per cent per annum, interest payable semi-annually, said interest to be evidenced by coupons attached to said bonds; provided, the right to take up and cancel such bond or bonds, upon the payment of the face value thereof, with accrued interest to the date of payment, at any semi-annual coupon

period at or after one year from the date of such bond or bonds, shall be and hereby is vested in the city * * *''.

*Loan Association v. Topeka* was decided in 1874; *United States v. New Orleans* in 1878; *Ralls County v. United States* in 1881; and *Quincy v. Jackson* in 1885. As we have seen, the federal supreme court held in each of these decisions that a legislative grant of authority to issue bonds carried with it power to make the needed tax levies. The Bancroft Bonding Act was not enacted until 1893, nineteen years after the first of these decisions and nine years after the last had been announced. Hence, the legislature must have known when it enacted this important item of legislation that its grant of authority to issue bonds was accompanied with authority to levy taxes. The latter power was not merely given by implication. We find it expressed in the statute itself when we construe the latter's language in the light of the decisions which had been announced before the authors of this statute wrote their bill. They must have known that their act would be construed to mean that all cities were empowered to not only issue bonds but also to levy the needed taxes for the payment of the bonds. It does no violence to language to say that the power to tax is an express power. It is our belief, therefore, that the power to incur the indebtedness granted by this legislation is accompanied with a power to impose the necessary taxes.

Having concluded that the city possesses power to levy taxes for the discharge of these bonds, we pass on to a consideration of the defendants' contention that any tax levied for that purpose is subject to the tax limitation provisions previously quoted, which are a part of the city's charter. Defendants invite atten-

tion to Article XI, § 5, Oregon Constitution, above quoted, and state that Chapter 6, subdivisions 1, 2 and 10a of the city charter were inserted in the charter in obedience to the requirements of that constitutional provision.

La Grande received a legislative charter in 1865, which was subsequently amended five times by the legislature, the last legislative amendment being made in 1905. June 4, 1906, the Oregon Constitution was amended by extending the initiative and referendum privileges to the voters of every municipality in regard to municipal legislation. In 1910 the following provision was inserted into the state constitution: "Corporations may be formed under general laws, but shall not be created by the legislative assembly by special laws. The legislative assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the constitution and criminal laws of the state of Oregon, and the exclusive power to license, regulate, control, or to suppress or prohibit, the sale of intoxicating liquors therein is vested in such municipality; but such municipality shall within its limits be subject to the provisions of the local option law of the state of Oregon." (Oregon Constitution, Art. XI, section 2). Exercising the powers to which reference has just been made, the voters of the city of La Grande amended their charter in the years 1915 and 1922. The provision upon which defendants rely did not become a part of the charter until after the year 1910. Hence it was not adopted obedient to Article XI, § 5, Oregon Constitution.

■■ General statutes applicable to all cities are not controlled or circumscribed by charter provisions in

conflict with them: *Burton v. Gibbons,* 148 Or. 370 (36 P. (2d) 786); *City of Gearhart v. Gearhart Park Co.,* 132 Or. 496 (286 P. 147). The statute with which we are now concerned is a general statute applicable throughout the entire state: *Fehl v. City of Medford,* 107 Or. 478 (215 P. 180); *Fay v. Portland,* 99 Or. 490 (195 P. 828); *Colby v. City of Medford,* supra. From the decision last cited we quote:

"The Bancroft Bonding Act was passed by the legislative assembly and it is a statute of state-wide application, for it embraces every city and town in the state. The amendments found in Article IV, Section 1a, and Article XI, Section 2, of the constitution have not shorn the legislature of power to enact general laws concerning cities and towns: *Rose v. Port of Portland,* 82 Or. 541 (162 P. 498). Although passed prior to these two constitutional amendments, the Bancroft Bonding Act possesses just as much validity now as it did when originally enacted, for it governs, controls and dominates every incorporated city and town in Oregon. When a property owner brings himself within the Bancroft Bonding Act he puts into operation a state law which completely controls the city so long as the owner promptly pays his installments and interest. The city is utterly powerless to enact and enforce municipal legislation which overrides this state law."

Since the city possesses power to levy taxes for the payment of the bonds involved in this proceeding, and since that authority was conferred by a legislative act of general application to all cities, it follows that the power thus granted is not controlled by the charter provisions, but rather the charter limitations must yield to the provisions of the statute. In effect, the statute is an amendment to the charter. Such being true, a levy of the needed tax would not violate any principle of law mentioned in *Corbett v. City of Portland,* 31

Or. 407 (48 P. 428) (cited by defendants), the material portion of which follows:

"The power of taxation is a sovereign right which belongs exclusively to the legislative branch of the government, and can only be exercised by subordinate governmental divisions in pursuance of laws passed by the legislature for that purpose. They are but instrumentalities of the state, brought into existence for public purposes, and have no authority beyond that conferred by the law creating them. They have no inherent power of taxation. Their right to impose burdens upon persons or property is wholly statutory, and can be exercised only to the extent granted, and when the limit prescribed in the grant of the taxing power is reached the power is exhausted, and the courts cannot even compel the levy of a tax in excess of that limit at the suit of a creditor whose debt would otherwise remain unpaid. * * *."

That statement does not conflict with the conclusion above announced because the Bancroft Bonding Act does not recognize any tax limitation found in a municipal charter. Nor does it conflict with *United States v. County of Macon*, 99 U. S. 582 (25 L. Ed. 331). In that case the act conferring upon the county authority to make a subscription to the corporate stock, whereby the debt was created, limited the county's power to provide for the payment of the debt to an annual tax of one-twentieth of 1 per cent. The court, therefore, concluded that it could not legally compel the levy of taxes beyond the amount so authorized. It follows that the charter tax limitation of the city of La Grande does not interfere with the defendant's power to impose a tax in a sum large enough to discharge plaintiffs' defaulted interest coupons.

We find no merit in defendants' contention that since they and their associates upon the city budget committee (see §§ 69-1101 to 69-1115, Oregon Code

1930) did not include these interest items in the budget this proceeding must be dismissed. As we have seen, interest upon the bonds involved in this proceeding was a debt of the city, and it possessed ample authority to levy a tax for the payment of that debt. Power to levy taxes to pay debts imposes a duty to exercise the power: McQuillin, Municipal Corporation (2d Ed.). § 2536, Section 69-1104, Oregon Code 1930, provides:

"Said estimates shall show also the amount proposed to be expended for * * * the payment of bonded, floating, funded, warrant or other indebtedness and the interest thereon, and * * *."

It was, therefore, the duty of the budget committee to include in the budget the sum needed for interest payments. The city cannot repudiate its indebtedness by omitting mention of it in its budget.

Mandamus, we believe, is the proper remedy to force assessment of a tax where the duty to do so, as in the instant case, is clear: *State v. McClain,* 132 Or. 561 (286 P. 590); *Kollock v. Barnard,* 116 Or. 694 (242 P. 847); *Noble v. Yancey,* 116 Or. 356 (241 P. 335, 42 A. L. R. 1178); McQuillin, Municipal Corporations (2d Ed.) § 2722; and 38 C. J., Mandamus, p. 776, § 424.

The above, we believe, disposes of every contention submitted by the defendants. However, it may be that their contentions also challenge the validity of §§ 56-2001 to 56-2011, Oregon Code 1930. Believing that such a contention is possibly included in defendants' arguments, we shall now undertake to determine whether these sections of our laws conflict with Article XI, Section 5, Oregon Constitution, previously quoted; that being the only constitutional provision mentioned by the defendants. Of course, if the act was not valid

when enacted, it can not be valid at the present time. As we have seen, the Bancroft Bonding Act was enacted in 1893, 42 years ago. Shortly after its enactment its validity was assumed in *Mall v. City of Portland,* 35 Or. 89 (56 P. 654). In *Ladd v. Gambell,* 35 Or. 393 (59 P. 113), wherein the validity of the act was assailed, we found no conflict between it and the provisions of Article I, Section 32, and Article IX, Section 1, Oregon Constitution, nor between the act and the 14th amendment to the Federal Constitution. In *Stratton v. Oregon City,* 35 Or. 409 (60 P. 905) ; *Parker v. Hood River,* 81 Or. 707 (160 P. 1158) ; *Colby v. Medford,* 85 Or. 485 (167 P. 487) ; *Wagoner v. City of La Grande,* 89 Or. 192 (173 P. 305) ; *Patterson v. Ashland,* 95 Or. 233 (187 P. 593) ; and *Wilson v. City of Medford,* 107 Or. 624 (215 P. 184), the validity of the act was recognized. This situation renders pertinent a repetition of the following observation made in *State v. Bay City,* 65 Or. 124 (131 P. 1038) :

"It is suggested that the act authorizing the incorporation of towns (L. O. L., § 3206 et seq.) is unconstitutional; but no sound argument can be brought to sustain this contention. It has been on the statute books for many years, has been frequently invoked, and generally acquiesced in by the public and recognized by the courts. Under its provisions, many towns have been incorporated and have grown into prosperous municipalities. If there existed a reasonable doubt as to the constitutionality of the act, we would, under well known and often reiterated maxims of the law, be constrained to hold it constitutional. * * *"

The city of La Grande is not in a position to contest the validity of these sections of our laws which are purely administrative in character. The city has availed itself of the benefits of this legislation by marketing the several bond issues mentioned in the writ.

In *State v. Jutstrom Fish Co.*, ante p. 362 (39 P. (2d) 355), we pointed out that one who avails himself of the benefits of a law which is not criminal in character and which has no relationship to the public morals, precludes himself from contesting its validity. The charter of the city of La Grande confers upon it power to make the public improvements mentioned in the Bancroft Bonding Act and to issue bonds. Hence, we are not concerned with any issue of ultra vires. We believe that that principle of law stated in *State v. Jutstrom Fish Co.*, supra, is applicable to the present situation. The city placed these bond issues upon the market and applied the proceeds to its municipal purposes. By so doing it precluded itself from contesting the validity of this enactment. In addition to the authorities cited in *State v. Jutstrom Fish Co.*, see Cooley's Constitutional Limitations (8th Ed.), p. 368, and 12 C. J., Constitutional Law, p. 772, § 197, and especially, *Mt. Vernon v. State*, 71 Ohio St. 428 (73 N. E. 515, 104 Am. St. Rep. 783, 2 Ann. Cas. 399). Moreover, charter tax and indebtedness limitations are applicable to only the ordinary course of municipal operations, but have no application to additional undertakings inaugurated pursuant to additional legislative action. See Dillon, Municipal Corporations (5th Ed.) § 322, footnote 3. Such being true, it is our belief that Article XI, Section 5, Oregon Constitution, contemplated the inclusion in legislative charters of tax and indebtedness limitations applicable to only those financial transactions resulting from the powers granted municipalities by their legislative charters; but not applicable to transactions resulting from additional legislative enactments. Accordingly, we find no conflict between the Bancroft Bonding Act and the aforementioned constitutional provision.

■ We know of no circumstance which would warrant us in withholding issuance of the writ. It should command, however, the levy of a tax for the discharge of only the defaulted interest coupons. It is the city's duty to pay the interest coupons which will become due in January, 1936, but we cannot assume that the defendants will neglect their duty in regard thereto.

From these considerations, it follows that a peremptory writ will issue, commanding the levy of a tax sufficient in amount to enable the city to pay all defaulted interest coupons involved in this proceeding.

CAMPBELL, C. J., and BEAN, BELT, BAILEY and RAND, JJ., concur.

---

KELLY, J. (specially concurring). If the writer understands defendants' oral argument (inter alia) it challenges the validity of the Bancroft Bonding Act, because nowhere in the act is the power of cities restricted in the matter of taxation, borrowing money, contracting debts or loaning credit.

Unquestionably, Section 5, Article XI of the Constitution of Oregon, imposes a limitation upon the authority of the legislative assembly. It provides that:

"Acts of legislative assembly incorporating towns and cities shall restrict their powers of taxation, borrowing money, contracting debts, and loaning their credit." (Vol. 1, Oregon Code 1930, p. 173.)

The courts in sister jurisdictions have construed similar provisions, and with great unanimity have held that these provisions do not require the legislature to limit municipalities to a certain rate of taxation; but the restrictions may be indirect instead of direct: *Hines, et al. v. City of Leavenworth, et al.*, 3 Kan. 186; *Hill v.*

*Higdon,* 5 Ohio St. 243 (67 Am. Dec. 289); *Maloy v. Marietta,* 11 Ohio St. 636; *The People v. Mahaney,* 13 Mich. 481; *City of Newton v. Atchison,* 31 Kan. 151 (1 P. 288, 47 Am. Rep. 486); *State ex rel. Bartless v. Town Council of City of Beaufort,* 39 S. C. 5 (17 S. E. 355).

There is a very full discussion of this subject in *Foster v. The City of Kenoska,* 12 Wis. 688, supplemented by the later Wisconsin case of *Oconto City Water-Supply Co. v. Oconto,* 105 Wis. 76 (80 N. W. 1113).

The Bancroft Bonding Act contains restrictive provisions: First, by limiting its effect to those instances where the competent authority of the city shall have taken proceedings for the improvement of a street or part of a street or the laying of a sewer; second, by fixing the amount as being in excess of $25, which it must cost the property owner affected thereby in order to enable such owner to invoke the provisions of the act; third, by requiring such property owner, within a specified time, to file his written application that he be allowed to pay the cost of such improvement in installments, and to state therein that he waives all irregularity in such proceedings; fourth, by requiring the entry and record thereof to be separate for each street or sewer to be improved or laid, and indexed accordingly; fifth, by imposing a lien in favor of the city against each lot or parcel of land or other property therein described for the amount of such assessment docketed against each such parcel or lot of land or other property until the same is paid; and, sixth, by limiting the amount of the bond issue to an amount equal to all of the assessments against the property affected and upon which the owners have filed said application, and by limiting the amount of each bond and prescribing its form and contents. There are other

restrictions in the act, but these suffice to show a compliance with the constitutional clause under discussion; and vindicate the act as one complying with said constitutional provision.

The writer concurs in the holding of the court that a city is without authority to amend or repeal a valid general act; that a general act prevails over a charter provision, and that the authority conferred upon cities by the Bancroft Bonding Act necessarily implies a power to levy a tax for an amount adequate to discharge the objections incurred pursuant thereto.

---

Petition for rehearing denied March 12, 1935

## On Petition for Rehearing

ROSSMAN, J. The petition for a rehearing challenges our conclusion that the answer admits that the bonds involved in this proceeding were issued pursuant to the provisions of sections 56-2001 to 56-2011, Oregon Code 1930 (Bancroft Bonding Act). We have again examined the pleadings and remain satisfied that our conclusion was warranted. In addition, one of the first statements that appears in the plaintiff's brief is the following: "It is stipulated that the bonds described in the complaint are held by plaintiffs, and the bonds are described as being issued pursuant to sections 56-2001 to 56-2011, Oregon Code 1930, * * *." The defendants' brief does not contend that these bonds were issued pursuant to charter provisions, but apparently acquiesces in the statement that they are Bancroft bonds. For instance, at one place the defendants' brief states: "The Bancroft Act provides for the issuance of bonds but it does not provide for their payment. Sections 56-2001 et seq, Oregon Code." In fact, the power conferred by the Bancroft Act is virtually the

only issue argued in the briefs, apart from the circumstances under which the remedy of mandamus is granted. But whether we properly construed the pleadings or not is immaterial under the circumstances, for the single bond introduced in evidence "as an exhibit of the bonds that are held by plaintiffs" recites upon its face: "This bond is one of a series of bonds authorized by and under the provisions of the charter of said city and sections 3788 and 3796, inclusive, Oregon Laws, as amended." The sections of our laws mentioned in the bond are now sections 56-2001 to 56-2011, Oregon Code 1930. The defendants make no contention that the bond received in evidence is not typical of all those mentioned in the writ.

We deem it unnecessary to state our conclusions in regard to other contentions advanced in the petition for a rehearing.

The petition for a rehearing is denied.

CAMPBELL, C. J., and RAND, BEAN, KELLY, BELT and BAILEY, JJ., concur.