Argued May 24; affirmed May 31, 1939

# CITY OF CASCADE LOCKS *v.* CARLSON

(90 P. (2d) 787)

558

Department 1.

*Teunis J. Wyers*, of Hood River, for appellant.
*Celia L. Gavin*, of The Dalles, for cross-appellant.

BAILEY, J. The city of Cascade Locks, a municipal corporation, as plaintiff, and W. J. Carlson, recorder of the city of Cascade Locks, as defendant, submitted

without action, pursuant to §§ 2-1301 to 2-1303, inclusive, Oregon Code 1930, for the determination of the circuit court for Hood River county, the question of whether or not a peremptory writ of mandamus should issue from that court directing the defendant as such officer to execute certain bonds authorized by the city council of Cascade Locks. This was done by filing with the clerk of that court "in writing, a case containing the facts upon which the controversy depends".

The written statement, after setting forth the corporate character of the plaintiff and the official position of the defendant, states that the city of Cascade Locks on September 13, 1938, at a regularly held election adopted an amendment to the charter of that city known as chapter 10. This amendment authorized the city through its common council to purchase, acquire, construct, equip, maintain and own either within or without, or partly within and partly without, the corporate limits of the city a municipal electric light and power system, and in order to provide for these purposes the common council was authorized and empowered by resolution to issue bonds payable solely out of revenue derived from the operation of such light and power system. This amendment provided the manner of issuing the bonds and required that the bonds so issued should specifically state that payment thereof was limited to revenues derived from the operation of the light and power system.

Acting pursuant to the provisions of the amendment, the city council passed a resolution authorizing the issuance of revenue bonds in the total principal sum of $90,000 "for the purpose of purchasing, acquiring, constructing, equipping, maintaining and extend-

ing" such system. Neither the minimum price at which the bonds should be sold nor the maximum rate of interest was specified in the charter amendment or in the resolutions.

In accordance with the amendment and resolutions passed by the people and the city council, respectively, the city received and accepted a bid for the purchase of not exceeding $79,000 face value of the bonds at the rate of $95 for each $100 of par value and accrued interest, such bonds to bear interest at the rate of 4½ per cent per annum, and proposed to issue and sell bonds for which the bid had been received. Pursuant to the charter amendment, the resolutions adopted by the city council and the bid received for the purchase of the bonds, the council caused to be prepared, and had the mayor sign, forms of bonds, presented the same to the recorder and demanded that he execute them. The recorder refused to sign the bonds so presented, assigning as a reason therefor that the charter amendment and the resolutions passed pursuant thereto, authorizing the issuance of the bonds, were unconstitutional and void in particulars pointed out by him.

The bonds at no time were advertised for sale, and the bid was not accompanied by certified check or other deposit, nor was it publicly opened pursuant to advertisement.

It is further stated in the "agreed case" that the total assessed valuation of property subject to taxation by the city of Cascade Locks does not exceed $305,-180.95, and that the city now has outstanding general obligation bonds in the sum of not less than $31,000.

The prayer was for "a judgment of this court determining whether said bonds if regularly issued pur-

suant to said resolutions and said charter amendment be valid and whether the defendant recorder should be required to execute them and whether a peremptory writ of mandamus requiring said defendant so to do should be issued or whether the issuance of said bonds should be enjoined, or that the court issue such other order or judgment as it may deem proper in the premises."

The circuit court in what is denominated a decree ruled in all respects in accordance with the contentions of the plaintiff, with one exception. That exception was that the bonds should have been advertised and sold pursuant to § 56-2307, Oregon Code 1935 Supplement. Both the plaintiff and the defendant appeal from that decree.

Before discussing the points raised on this appeal, attention is directed to the fact that § 2-1301, *supra,* provides for submitting a controversy "which might be the subject of an action at law in a court of record", without action, by following the procedure outlined in the next two sections of the code. Those sections were part of the original code of civil procedure enacted in 1862, long prior to the enactment of the declaratory judgment act, chapter 300, Laws 1927. The "decree" from which both the plaintiff and the defendant herein have appealed is more in the nature of a judgment or decree under the declaratory judgment statute than a judgment such as contemplated by the provisions for submitting a controversy without action.

■ Proceedings in mandamus are generally regarded as in the nature of an action at law: *Nelson v. Baker,* 112 Or. 79, 94, 227 P. 301, 228 P. 916. We shall assume, without deciding whether or not the procedure adopted was within the contemplation of §§ 2-1301 to 2-1303,

inclusive, *supra,* that the question of whether a peremptory writ of mandamus should be issued by the circuit court was properly presented to that court and is now before us for final determination.

■■ The circuit court held that § 56-2307, *supra,* covered bonds or revenue certificates such as were proposed to be issued and sold by the city of Cascade Locks. This section provides in part that "all legally authorized bonds of cities and towns hereafter issued shall be advertised for sale at least once each week for not less than two successive weeks in a newspaper of general circulation". It further provides that all bids for such bonds shall be in writing, accompanied by certified check for not less than 2 per cent of the par value of the bonds offered for sale. The statute also requires that the bids be publicly opened and the bonds sold to the highest responsible bidder, for not less than 95 per cent of their par value and the entire amount of accrued interest. Certain types of bonds, not including, however, the kind here involved, are excepted from the operation of this section.

The original act of which § 56-2307, *supra,* is a codification is chapter 359, Oregon Laws 1931, the title of which is, "An act to provide for the advertisement and sale of certain bonds by cities and towns". The 1931 enactment was amended by chapter 21, Oregon Laws, Second Special Session 1933, which amendment is not material to the question now before us. There is nothing in the title or in the act itself which would indicate that the legislature intended the provisions of the statute to be limited to only such bonds as would be a general obligation of the city or town issuing them.

Chapter 10, which is an amendment of the city charter of Cascade Locks, hereinabove mentioned, re-

fers to the instruments here involved as "bonds" which the city of Cascade Locks is granted authority and power to issue and sell. The resolutions of the city council also refer to the issuance and sale of bonds.

McQuillin on Municipal Corporation, 2d Ed., volume 6 revised, in the introductory statement regarding municipal bonds, § 2421, asserts that, "Municipal bonds are obligations, negotiable in form". In § 2423 it is stated that municipal bonds are divided into (1) negotiable and (2) nonnegotiable bonds, and that "negotiable bonds include (1) funding and refunding bonds, (2) improvement bonds commonly payable from special assessments, and (3) railway aid bonds, all of which have some characteristics more or less peculiar". In § 2428 it is pointed out that generally improvement bonds are payable only from a special fund, and that such bonds "have been held non-negotiable because there is no certainty as to payment". It is further stated therein that improvement bonds do not ordinarily create any personal liability against the municipality to pay them from general funds, and that "an action can not be brought on the bonds to recover a general judgment against the municipality for the amount thereof".

■ In our opinion, the bonds, or, as the plaintiff terms them, revenue certificates, are bonds within the meaning of § 56-2307, *supra*. They cannot be issued or sold except in accordance with the requirements of that section of the code.

■ It is, however, contended by the plaintiff that § 56-2307, *supra*, is violative of article XI, § 2, of the Oregon constitution, in so far as it applies to bonds which are not a general obligation of the municipality but limited to revenues derived from the operation of a

light and power system. In this connection it is argued that the charter amendment refers to matters which are local, special and municipal in character and therefore not subject to state regulation.

Section 56-2307, *supra,* is a general law applicable to all cities. In *Burton v. Gibbons,* 148 Or. 370, 36 P. (2d) 786, it was held that the refunding of water bonds of the city of Reedsport was not "purely a matter of local concern" and that a state statute providing the method of refunding such bonds took precedence over charter provisions and ordinances of the city of Reedsport. In view of that decision, also *State ex rel. v. Melville,* 149 Or. 532, 39 P. (2d) 1119, 41 P. (2d) 1071, *Winters v. Bisaillon,* 152 Or. 578, 54 P. (2d) 1169, and *City of Portland v. Welch,* 154 Or. 286, 59 P. (2d) 228, 106 A. L. R. 1188, it is manifest that § 56-2307, *supra,* is not unconstitutional as applied to bonds such as those proposed to be issued by the city of Cascade Locks. The issuance and sale of municipal bonds limited to payment out of revenue derived from operation of public utilities would seem to be no less a subject of state regulation than the issuance and sale of refunding bonds such as were involved in *Burton v. Gibbons,* supra, and the matters held proper subjects of state legislation in the other cases above cited.

■ Section 56-2301, Oregon Code, 1935 Supplement, as amended by chapter 71, Oregon Laws Special Session 1935, placing a limitation on bonds which may be issued by a city or town, of 5 per cent of the assessed valuation of the property within the boundaries of such city or town, expressly provides that that section "shall not apply to bonds issued for water, sewer, sewage disposal plants, gas, power or lighting purposes". In construing that section as it read prior to the 1935 amend-

ment, this court in *Shainwald v. Portland*, 153 Or. 167, 186, 55 P. (2d) 1151, held that public utility certificates or self-liquidating bonds were therein expressly excluded from the limitation on bonded indebtedness. The amendment, it may be observed, did not affect the statute in any wise as concerns the question here before us.

■ It is also urged by the defendant that the charter amendment, chapter 10, is void for the reason that it does not specify the maximum amount of bonds which may be issued by the city of Cascade Locks. It has already been pointed out that bonds which are authorized to be issued under this amendment are not general obligations of the city but are limited to payment out of revenue derived from operation of the light and power plant. The defendant cites no authority in support of his contention. He does, however, refer to decisions which seem to indicate that when the question of issuing bonds is submitted to a vote of the people the maximum amount of bonds to be issued must be specified.

This charter amendment is in the nature of an enabling act authorizing the city council to acquire or construct and operate an electric light and power plant, and providing the method by which such a plant may be acquired and maintained. Many of the charters of cities in the state of Oregon contain provisions authorizing the city to acquire and operate different forms of public utilities, yet upon investigation we have not found any which limit the amount of bonds to be issued, if such bonds are to be paid entirely from revenue derived from operation of the utilities. In the present instance the resolution providing for the sale of bonds did limit the amount of such bonds. We do not believe

that the charter amendment is unconstitutional as not limiting the amount of bonds that may be issued.

■ The bonds here involved do not constitute an indebtedness against the city within the meaning of article XI, § 5, of the Oregon constitution, which provides that "acts of the legislative assembly incorporating towns and cities shall restrict their powers of taxation, borrowing money, contracting debts, and loaning their credit": *Butler v. Ashland,* 113 Or. 174, 183, 232 P. 655.

The failure of the city of Cascade Locks to comply with the provisions of § 56-2307, *supra,* in the particulars above indicated necessitates our upholding the decree of the circuit court, which accordingly is affirmed.

RAND, C. J., and KELLY and BEAN, JJ., concur.