Argued 2 November; decided 4 December, 1899.

## LADD *v.* GAMBELL.

[59 Pac. 113.]

1. MUNICIPAL CORPORATIONS — CONSTITUTION — STREET ASSESSMENTS.— The statute of 1893, p. 171, commonly known as the Bancroft Bonding Act, providing that, where cities of two thousand five hundred inhabitants improve a street at the expense of abutting property, the owners thereof whose assessments exceed $25 may pay such assessments in installments, and the city may issue interest-bearing bonds for the amount of deferred assessments to pay for such improvements, is not unconstitutional as in violation of the State Constitution, Article I, § 32, or Article IX, § 1, since those sections do

not apply to assessments for street improvements. Nor is that law an abuse of legislative discretion, it being competent in cases of public improvements to divide the property owners into classes and provide a method of payment that shall be uniform in each class.

2. IDEM.—Nor is the said bonding act unconstitutional because the taxpayers at large must pay the interest on the bonds therein provided for, since the constitution requires equality and uniformity only in the levy and collection of taxes, and does not apply to the distribution of revenue.

3. IDEM.—Nor was the bonding act repealed by the subsequent Portland charter (Laws, 1898, §§ 221, 226), limiting its bonded indebtedness to certain designated sums, and declaring that no city officer shall have authority to create any indebtedness binding on such city until funds have been provided for its payment, or to contract any liability that shall fall due more than two years from its date, or to issue warrants when there is not money on hand to pay them, for the debt limit of the charter applies only to debts created under its provisions, and does not affect statutes of general application.

From Multnomah: JOHN B. CLELAND, Judge.

This suit is brought by Charles E. Ladd to restrain A. N. Gambell, who is the auditor of the City of Portland, from issuing any further bonds under what is called the Bancroft Bonding Act (Laws, 1893, p. 171), because the same is unconstitutional. The provisions of the act are set out in the opinion. Plaintiff had a decree, and defendant appeals.          REVERSED.

For appellant there was an oral argument by *Mr. Joel M. Long*, City Attorney, with a brief over the names of *J. M. Long* and *R. R. Duniway*, to this effect:

I. This act does not contravene the Oregon Constitution, Article I, § 32, or Article IX, § 1, for neither section limits the method of assessing for municipal improvements: *King* v. *City of Portland*, 2 Or. 146, 161; *Meier* v. *Kelly*, 20 Or. 86; *Hayden* v. *City of Atlanta*, 70 Ga. 823.

II. Plaintiff will fail in his appeal to the Fourteenth Amendment to the Constitution of the United States. The bonding act applies equally to all in the class under the $25 assessment, and equally to all in the class above the $25 assessment. That is all that is required

by the Fourteenth Amendment to the Constitution of the United States. The interest on the bonds must be paid by the city from the eight-mill tax levy, which tax is levied upon all the property in the city. There is no special method by which the city raises the interest on the bonds. Due process of law, within the meaning of the amendment, is obtained if the law operates evenly on all in the same class, and does not subject the individual to any arbitrary exercise of the powers of government: *Giozza* v. *Tiernan*, 148 U. S. 657 (13 Sup. Ct. 721); *Bell's Gap R. R. Co.* v. *Com. of Pennsylvania*, 134 U. S. 232 (10 Sup. Ct. 533); *Home Ins. Co.* v. *State of New York*, 134 U. S. 594 (10 Sup. Ct. 593); *Pacific Exp. Co.* v. *Seibert*, 142 U. S. 339 (12 Sup. Ct. 250); *Leeper* v. *State of Texas*, 139 U. S. 462 (11 Sup. Ct. 577); *McGown* v. *Illinois Trust & Sav. Bank*, 170 U. S. 283 (18 Sup. Ct. 594); *Crawford* v. *Linn County*, 11 Or. 482, 492 ; *Henderson Bridge Co.* v. *Henderson*, 19 Sup. Ct. 553 ; *City of Aurora* v. *McGannon*, 138 Mo. 38 (39 S. W. 469); *Hammond* v. *Muskegon School Board*, 109 Mich. 676 (67 N. W. 973).

For respondent there was an oral argument by *Messrs. William A. Cleland* and *Schuyler C. Spencer*, with a brief to this effect :

I.    Local assessments can only be constitutional when imposed to pay for local improvements clearly conferring special benefits on the properties assessed, and to the extent of these benefits: Art. I, § 18, Const. Or.; Cooley, Tax. (2 ed.) p. 225 ; *Hamett* v. *Philadelphia*, 65 Pa. St. 146 (3 Am. St. Rep. 615) ; *Village of Norwood* v. *Baker*, 172 U. S. 269 (19 Sup. Ct. 190–191) ; *Sears* v. *Street Com'rs of Boston*, 173 Mass. 350 (53 N. E. 876–877) .

II.   Local assessments can be justified and upheld only upon the theory that the owner of the property assessed is to receive a benefit corresponding with the amount assessed, and that this is to be paid to meet the cost and expense of the improvements : *Matter of Mead*, 74 N. Y. 216 ; Dillon, Mun. Corp. (3 ed.) § 761, subd. 3 ; Art. I, § 18, Const. Or. ; Elliott, Rds. & Sts. p. 400 ; Cooley, Tax. (2 ed.) pp. 674–675.

III.   The rule of assessment or taxation must be such that under it equality within the taxing district is at least contemplated or not legally impossible : Const. U. S. Art. XIV, § 1 ;  Const. Or. Art. I, § 32, Art. IX, § 1 ; Dillon, Mun. Corp. (3 ed.) § 761 ;  Cooley, Const. Lim. (3 ed.) pp. 499–504 ; *Masters* v. *City of Portland*, 24 Or. 161–167 ;  *City of Chicago* v. *Baer*, 41 Ill. 306 ;  *East Portland* v. *County of Multnomah*, 6 Or. 63–66 ;  *Oregon & Cal. R. R. Co.* v. *City of Portland*, 25 Or. 229–240 ;  *Allen* v. *Drew*, 44 Vt. 174 ;  *Thomas* v. *Gain*, 35 Mich. 155–162 (24 Am. Rep. 535);  *Tidewater Co.* v. *Coster*, 18 N. J. Eq. 579 ;  *Cummings* v. *Book*, 101 U. S. 153–157 ;  *Village of Norwood* v. *Baker*, 172 U. S. 269 (19 Sup. Ct. 187).

IV.   The legislature cannot provide unequal rates of taxation of property or different processes of collection from different individuals :  *Knowlton* v. *Board of Supervisors*, 9 Wis. 410–423 ;  *Attorney-General* v. *Plank Road*, 11 Wis. 35 ;  *McComb* v. *Bell*, 2 Minn. 256.

Mr. Justice Bean delivered the opinion of the court.

1.   This is a suit to test the validity of what is known as the "Bancroft Bonding Act" ( Laws, 1893, p. 171 ), which provides, in effect, that whenever any city within this state having a population of twenty-five hundred or more shall improve a street at the expense of the abutting property, any owner of such property whose assessment

shall exceed $25 may, by filing with the proper officer a written application, be permitted to pay such assessment in ten equal annual installments, the city to issue its six per cent. ten-year bonds for the amount of such deferred assessments, for the purpose of raising money with which to pay for the improvement in the first instance. The contention is that, since the interest on the bonds so issued is payable out of the general fund of the city, and not by the persons who elect and are entitled to pay their street assessments in installments (*Mall* v. *City of Portland*, 35 Or. 89, 56 Pac. 654), the act is unconstitutional and void for want of uniformity, because it not only denies to the property owner whose assessment is $25 or less the right to pay his assessment in installments, but also requires him to contribute, under the power of taxation for general municipal purposes, to the fund out of which the interest on the bonds is to be paid. It was early held in this state that the provisions of the constitution that "all taxation shall be equal and uniform" (Art. I, § 32), and that "the legislative assembly shall provide by law for uniform and equal rate of assessment and taxation" (Art. IX, § 1), have no application to special assessments for street improvements (*King v. City of Portland*, 2 Or. 146); and this seems to be the generally accepted rule (2 Desty, Tax'n, 1251). There being, therefore, no constitutional restriction upon the legislature in this regard, it consequently has a broad discretion in making provision for ascertaining what property is specially benefited by a local improvement, and how the benefit shall be apportioned: 2 Dillon, Mun. Corp. § 761. And, while the adjudged cases do not agree upon the extent of the legislative power, we are of the opinion that the bonding act does not render an assessment for street improvements so unequal and unjust as to authorize a court to declare it invalid on that account.

Perfect equality in such an assessment is hardly attainable, and approximation is all that can be reasonably expected. It will be observed that the bonding act does not affect the method or manner of making the assessment or the apportionment of the cost of the improvement, but applies only to the payment of assessments after they have been made in conformity with the provisions of the municipal charter; and the fact that the legislature, in the exercise of its wisdom, has seen proper to divide the property owners into classes according to the amount of their respective assessments, and provide a method of payment equal and uniform among the several classes, does not, in our opinion, render the act void. Force and effect must be given to the legislative will in this respect : *Hammond* v. *Muskegon School Board*, 109 Mich. 676 (67 N. W. 973) ; *Youngblood* v. *Sexton*, 32 Mich. 406 (20 Am. Rep. 654) ; *City of Aurora* v. *McGannon*, 138 Mo. 38 (39 S. W. 469).

2. Nor is the contention sound that the law is void for want of uniformity, because the property owner whose assessment does not exceed $25 is required, through the power of taxation for general municipal purposes, to contribute to the fund out of which the interest on the bonds is paid. The constitution requires equality and uniformity in imposing the burden of taxation upon property for public purposes, but it does not apply to the distribution of revenue raised by the tax imposed. Thus it is held in *Holton* v. *Commissioners*, 93 N. C. 430, that an act of the legislature authorizing a tax on account of the public roads to be imposed upon the property of the taxpaying citizens of a municipality, and providing that no part of the revenue raised from the tax shall be expended within the corporate limits of the town, is not void because unequal and unjust; the court saying, "The constitution does not prohibit such inequality.

While it is very true that there must be equality and uniformity in imposing the burden of taxation upon the property subject to it, so that each taxpayer shall pay the same proportionate tax on the same species of property taxed that every other taxpayer pays, and the tax must be levied *ad valorem*, this rule of equality does not apply to the distribution of the revenue arising from such taxation. It is to be observed that the objection here is not to the method or rule observed in levying the tax. The levy, as we have seen, was by uniform rule, and regular. But the objection is to the distribution of the revenue to be raised by the tax imposed. Now, the necessities, wants, purposes, and interests of government are such that it is practically impossible to distribute its revenues equally among those who pay taxes. Indeed, this cannot, in most instances, be approximately done, not even to the localities from which most of it is taken. The state may—sometimes must—expend large sums of money in one section for proper and necessary purposes, while it expends very little in another, when perhaps the greater part of the taxes were paid by taxpayers in the latter. This is an essential inequality, arising from the diversified and multiplied wants and necessities of government. Its very nature renders such inequality necessary. A constitutional provision forbidding it would defeat—at all events, greatly hinder—the purpose and aims of government. Such inequality prevails in the state government, and as well, and for the like reasons, in the county government. It may turn out—oftentimes does—that a large part of the county revenues must be expended in one locality in the county to build a road, construct a bridge, erect a workhouse, or the like; all essential to the general and common good of the people of the county.'' And the case of *Sears* v. *Board of Aldermen of Boston*, 173 Mass. 71 (53 N. E. 138, 43 L. R. A.

834), is instructive in this connection. The City of Boston, under its charter, caused some of the streets to be watered at the expense of the city, and others at the expense of abutting property, and it was held that the proceedings were valid, although under them the person owning property upon a street which was watered at the expense of the abutter was not only compelled to pay for the expense of watering the street in front of his property under the special assessment, but was also required to contribute, under the power of taxation for general purposes, to the fund out of which the expense of watering the streets in other parts of the city was paid. The court seems to have proceeded on the theory that these were matters within the legislative power of the city authorities, and that their determination in that regard was not improper. Upon the same principle we conclude that the time and manner of the payment of assessments for the improvement of a street, after they have been made in conformity to law, is a matter within the legislative discretion, and its action in that respect ought not to be disturbed by the courts unless it is manifestly unjust and oppressive. We are of the opinion, therefore, that the act in question is not open to the objection under consideration.

3. It is next contended that the bonding act was repealed, so far as it was applicable to the City of Portland, by the charter of 1898. There is no provision in the charter expressly repealing or modifying the bonding act, but the claim is that it was repealed by implication, because the charter provides that "neither the common council nor any officer of the city shall have authority to make any contract or do any act binding the City of Portland, or imposing upon said city any liability to pay money, until a definite amount shall first have been appropriated for the liquidation of all pecuniary liabili-

ties of said city under said contract or in consequence of said act," and that, "except as otherwise provided or permitted by this act, the indebtedness of the City of Portland shall never exceed in the aggregate the bonded indebtedness of $675,000 heretofore authorized for the erection and furnishing of the city hall; $750,000 heretofore authorized for the purpose of purchasing and constructing free bridges and ferries across the Willamette River; $3,200,000 heretofore authorized for the purpose of furnishing the city and the inhabitants thereof with water; $450,000 for funding the present city indebtedness and by this act authorized, and $506,500 bonded indebtedness of said city assumed under the act consolidating the cities of Portland, East Portland and Albina, nor shall said city ever contract any debt or assume any liability in any manner whatever by means of which it may be called upon or become bound to pay beyond the period of two years from the date of making such contract or assumption, nor shall the city issue warrants or other evidence of indebtedness without there is sufficient funds in the hands of the city treasurer to pay the same on presentation. All indebtedness issued contrary to this provision shall be null and void :" Laws, 1898, pp. 101, 183. Repeals by implication are not favored. It is only when the new statute revises the whole subject-matter of the old one, and is evidently intended as a substitute for it, or is so inconsistent with it that both cannot stand, that it will operate as a repeal of the former law : *Little* v. *Cogswell*, 20 Or. 345 (25 Pac. 727); *State* v. *Rogers*, 22 Or. 348 (30 Pac. 74) ; *Continental Ins. Co.* v. *Riggen*, 31 Or. 336 (48 Pac. 476) ; *Strickland* v. *Geide*, 31 Or. 373 (49 Pac. 982). Now the bonding act is a general law, applicable to all the cities of the state of a certain class, and provides that "no obligation incurred by any

35 OR.—26.

city in this state by virtue of this act shall be deemed or taken to be within or any part of the limitation by law as to indebtedness of such city." It formed no part of any former charter of the City of Portland, and was applicable to such city only because it belonged to the class designated in the law, and there is not such a direct and irreconcilable conflict between its provisions and that of the present city charter that both cannot stand. The one is a general act, affecting all the cities of the class designated, expressly declaring that the indebtedness therein provided for shall not be taken as a part of the municipal indebtedness within the limitation of the clause in the charter; the other, a special act, applicable only to the City of Portland, and undertakes to limit the indebtedness to be incurred by such municipality under the provisions thereof. In our judgment, the bonding act is not unconstitutional, nor was it repealed by the present charter of the City of Portland. The decree of the court below must therefore be reversed, and it is so ordered.

REVERSED.