Argued 19 February; decided 23 April, 1900.

## STRATTON *v.* OREGON CITY.

[60 Pac. 905.]

1. JUDICIAL NOTICE—POPULATION SHOWN BY CENSUS.—Courts take judicial notice of the number of inhabitants of a city as shown by the official census taken pursuant to state or federal laws.

2. STREET ASSESSMENTS—IMPLIED REPEAL—STATUTES.—The law of 1893, known as the Bancroft Bonding Act, providing that when any city of twenty-five hundred or more inhabitants shall improve a street at the expense of abutting property, owners whose assessment exceeds $25 may pay in installments, and the city may issue its bonds to the amount of the deferred assessments to pay for the work, is not affected by the Oregon City Charter (Laws, 1895, p. 486, § 85), which provides that the cost of street improvements may be assessed on the property liable therefor; that the city shall not be liable for any portion thereof by reason of its inability to collect the assessment; and that no moneys shall be paid out of the general fund for such purpose, but the contractor doing the work shall look entirely to the property and the owners thereof. There is no direct conflict in the two acts, and they refer to different classes of indebtedness—the liability of the city referred to in the charter being that of the city to the contractor, while that referred to in the statute is the liability on its bonds issued under the bonding act: *Ladd* v. *Gambell.* 35 Or. 393, applied.

From Clackamas:   THOMAS A. MCBRIDE, Judge.

Suit by Helen L. Stratton and others against the City of Oregon City and others. From a decree for defendants, plaintiffs appeal.                    REVERSED.

For appellants there was a brief over the names of *William Wallace Thayer* and *R. & E. B. Williams*, with an oral argument by *Mr. Emmet B. Williams*.

For respondents there was a brief over the name of *Hedges & Griffith*, with an oral argument by *Mr. Franklin T. Griffith*.

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

This is a proceeding to enjoin the Chief of Police of Oregon City from selling certain real property of the plaintiffs, situated within the limits of said city, for an assessment levied thereon for street improvements. The plaintiffs show that the assessment was greater than $25, and that they have complied with the requirements of the law familiarly known as the "Bancroft Bonding Act," which entitles them to the privilege of paying the amount assessed against such property in installments (Laws, 1893, p. 171); but that, notwithstanding their compliance with such regulations, the city has issued its warrant to the chief of police, who will, unless restrained, sell said property for the purpose of enforcing the payment of the whole of such assessment at once. The defendants combat the proceeding (1) by a motion to dismiss the appeal, which brings up the question whether the complaint, failing to allege a population exceeding twenty-five hundred, states facts sufficient to constitute a cause of suit; and (2) by insisting that the amended charter of Oregon City, having been adopted later than the bonding act, repealed it, in so far as it was operative to allow payment of such an assessment in installments. Of these in their order.

1. The contention that the complaint does not state sufficient facts is untenable, as the court will take judicial cognizance of the official census, taken in pursuance of the laws and regulations of the state or the United States: *Denney* v. *State ex rel.*, 144 Ind. 503, 525 (31 L. R. A. 726, 42 N. E. 929); *Worcester Nat. Bank* v. *Cheney*, 94 Ill. 430; *People* v. *Williams*, 64 Cal. 87 (2 Pac. 393). This being the case, it is unnecessary to state the number of inhabitants in the complaint: *City of Huntington* v. *Cast*, 149 Ind. 255 (48 N. E. 1025). Such is the rule, both at common law and under the code: 12 Enc. Pl. & Prac. 1. It is only necessary to observe, therefore, that under the last census of the United States, taken in pursuance of law, it appears that Oregon City had a population of more than twenty-five hundred.

2. The other contention presents much the same question as that recently settled in *Ladd* v. *Gambell*, 35 Or. 393 (59 Pac. 113). The bonding act is general in its application, and extends to all the cities of the state having a population of twenty-five hundred or more. It provides, in effect, that whenever in any such city the common council, or other governing body thereof, shall have taken proceedings for the improvement of any street, or part thereof, according to the provisions of the charter, it shall be lawful for any property owner affected thereby, and against whose property the assessment exceeds $25, at any time within ten days after notice of the amount of such assessment is first published to file with the auditor, recorder, or other proper officer, a written application to be allowed to pay the cost of such improvement in installments, waiving therein all irregularities in the proceedings taken for such improvement, and that thereupon such property owners may pay the cost thereof in installments, as otherwise provided by the act. The plaintiffs bring themselves within the purview of this

act, and, if it is not affected by the later act amending the city charter, they are entitled to such privilege. It should be further premised that the bonding act also provides that, when the docket of city liens shall have been completely made up in manner as therein provided, such city shall thereupon issue bonds, in convenient denominations, etc., equal to the amount of all assessments against property affected by the improvement, and upon which the owners thereof have notified, as previously provided for in the act.

Section 85 of the amended charter (Laws, 1895, p.486), contains the following provisions pertaining to street improvements : "In case the notice be for the improvement of a street, or part thereof, the council may proceed to ascertain and determine the probable cost of making such improvement, and assess upon each lot or part thereof liable therefor its share of such cost ; *provided, however*, and it is expressly understood, that neither Oregon City, nor any officer thereof, shall be liable for any portion of the cost or expense of any street work, improvement or the construction or repair of any sewer or drain by reason of the delinquency of persons or property assessed for the payment of said work, improvement or sewer, or by reason of the inability of said Oregon City to collect assessments levied for the payment of such work, improvement or sewer, as aforesaid, and no moneys shall ever be paid out of the general fund of the city on account of any such work, improvement, or the construction of streets or sewers, but the contractors doing such work shall be required to look entirely to the property affected by such improvement and the owners thereof ; *provided*, that the city may direct the payment out of the general fund of the city the cost of a repair when authorized and done in accordance and pursuant to section 108 of this act." And section 134 provides : "The following

acts are hereby repealed'' (designating five different acts, all having relation to the incorporation, and defining the limits and liabilities of said city), ''and all other acts or parts of acts in conflict herewith are hereby repealed.'' Now, it is argued that the legislature has provided, through the amended charter granted to Oregon City, a complete system and method of procedure for the improvement of its streets, and by the terms of section 134 has repealed all other acts in conflict therewith, including the bonding act, in so far as it may have primarily affected the municipality.    It will be noticed that the repealing clause designates certain acts, and ''all other acts or parts of acts in conflict'' with the act then adopted. All of the acts designated are special in their character, and allude entirely to the incorporation, powers, and liabilities of the city as a municipality.    This is followed by the general clause, purporting to comprehend all other acts in conflict with the act adopted.    This must be construed to extend to all other acts of the kind and nature therein enumerated being special in their character, and having relation to Oregon City :   Sutherland, Stat. Const. §§ 268–270.    It was manifestly not the intention of the legislature, by the use of this clause, to repeal any general act that might have application to the city or its regulations.

As it pertains to the other question, it is very true the new charter purports to provide an entire and complete system for making street improvements, and the assessment of expenses against the abutting property ;   and such has been the purpose of many city charters heretofore granted by legislative enactment.    But, unless the system provided is so ample as to supersede all general provisions standing upon the statute relative to the subject, it ought not to be regarded as a repeal thereof.    It is almost axiomatic that repeals by implication are not

favored, and in order that a subsequent enactment may operate as a repeal by implication by reason of having afforded a complete system within itself, it must obviously and palpably appear that it was intended to cover the whole subject-matter, and therefore, by implication, designed to stand in the place and stead of all previous enactments relating to the same subject : 23 Am. & Eng. Enc. Law (1 ed.), 485, 486.   This cannot be said of the amended city charter, and it would be largely speculative to attempt to determine from the enactment that it was intended to cover the whole subject-matter of street improvements within the city, notwithstanding the existence of a general statute having relation thereto.

It is also suggested that the charter regulations of section 85, in so far as they provide that neither the city nor any officer thereof shall be liable for any portion of the cost of such improvements, and that no moneys shall ever be paid out of the general fund of the city on account of such work, are in direct conflict with and repugnant to the bonding act, whereby the city is required to issue its bonds for the purpose of defraying expenses in the interim of the property holders' payment by installments.   But a provision of similar import, contained in the amended charter of the City of Portland, was held, in *Ladd* v. *Gambell*, 35 Or. 393 (59 Pac. 113), not to be repugnant to the general act.   It was evidently intended that the bonding act should become operative as it may respect cities subsequently attaining a population of twenty-five hundred or more, as well as those standing in that category at the time, and it provides that whenever such city shall have taken proceedings for the improvement of any street, etc., and the abutter has complied with its regulations, then he shall be entitled to pay in installments.   The act contemplates that such cities shall be provided with a system for making street improve-

ments and assessing the abutting property with the expense, and was intended to supplement all the charters of cities falling within the prescribed class, so that any act by which the charter of a city of that class is amended must be taken as having been adopted with reference to the general provisions · of the bonding act, unless specially repealed or flatly and obviously repugnant thereto. The liability alluded to, and against which the charter was intended to guard, is that of the city to the contractor, or the individuals making the improvements under the city's authority, and not the liability assumed by the issuance of its bonds. It was designed, also, to protect the general fund of the city, but the bonding act provides for a special fund, and the abutters are relieved by means of this latter act, and not by any draft upon the general fund. In this view the two acts are neither inconsistent nor repugnant in the particulars specified. In our judgment, therefore, the provisions of the bonding act permitting payments to be made in installments were not repealed or in any way affected by the new charter. The decree of the court below will therefore be reversed and one here entered making the injunction perpetual.

REVERSED.