[Civ. No. 18239. First Dist., Div. One. May 26, 1959.]

SAFEWAY STORES, INCORPORATED (a Corporation) et al., Appellants, v. CITY OF BURLINGAME et al., Respondents.

[Civ. No. 18132. First Dist., Div. One. May 26, 1959.]

GEORGIANA GRAY et al., Respondents, v. CITY OF BURLINGAME et al., Appellants.

638

George H. Johnston, Lloyd S. Ackerman, Philip S. Mathews, Willard P. Norberg and Ackerman, Johnston, Johnston & Mathews for Appellants in Civ. No. 18239 and Respondents in Civ. No. 18132.

Burress Karmel, City Attorney, and Kirkbride, Wilson, Harzfeld & Wallace for Appellants in Civ. No. 18132 and for Respondents in Civ. No. 18239.

HANSON, J. pro tem.*—We have here two appeals, one by the plaintiff in the case of *Safeway Stores, Inc.* v. *City of Burlingame* and the other by the defendant in *Gray* v. *City of Burlingame*. For the purpose of convenience of court and counsel the two cases were consolidated at the trial with a third case from which no appeal has been taken and the appeals are consolidated and being heard on the records as made below. In the first case the main question at issue is whether the property of Safeway should or should not be included in a proposed parking district and in the second case the issue

*Assigned by Chairman of Judicial Council.

is the validity of the resolution and ordinances creating the district.

The advent of the automobile on the American scene less than 60 years ago followed years later by supermarkets has wrought over the years a tremendous change in shopping practices for the public and the retailers. Today the old-time grocery with its hitching posts on the street in front is gone, and the retailers who were not forehanded enough to anticipate the change have suffered in sales and profits in not having provided parking space for automobiles. To meet the need the Legislature enacted the Parking District Law of 1951. (Sts. & Hy. Code, §§ 35100-35705.)

This law enables our municipalities on petition of owners of 51 per cent of the total assessed value of real property in the proposed district to establish a parking district for motor cars as long as it does not include any other parking district or any vehicle parking district (§ 35111).

Pursuant to the foregoing act a petition was filed with the City Council of Burlingame which included within the proposed district the Safeway Store and its parking lot. The latter has 119 parking spaces, of which only 71 spaces are required to accommodate the peak load at the parking lot. According to the engineer's report to the Council of Burlingame, the Safeway parking lot alone provides over one-third of all private off-street parking spaces found within the proposed parking district.

When Safeway acquired the lots zoned for apartment buildings upon which it subsequently built its store and adjoining parking lot it sought and obtained from the council a zoning variance but on nine certain conditions mostly as respects its use. Chief among these were the following: (1) that the parking area as proposed by Safeway should be so integrated with the public parking area of the city immediately adjacent so that both areas could be used interchangeably for the benefit not only of the patrons of Safeway but for the citizens of the city; (2) that if the use of the land as contemplated should be abandoned, its status should revert to its then apartment-zone status; (3) that Safeway convey to the city a small triangular piece of its land adjoining the city's parking lot; (4) that the breach of any of the conditions should cause a revocation of the variance granted by the city. It is undisputed that the conditions have long since been and continue to be met by Safeway.

The outer boundaries of the district are approximately 1,200

by 1,600 feet. The city hall appears to be in about the center of the district. The city parking lot adjacent to the Safeway parking lot faces Howard Street. The so-called apartment building, which was excluded from the district, is adjacent to the Safeway property on its east side and adjacent to the Gray property, upon which there is also an apartment house, on the west side. The telephone building, which is excluded from the district, is 200 feet westerly of the Gray property (Lot F), which was included within the district to be acquired as parking places, and the Lucky Store with its parking lot, which was likewise excluded, is only 700 feet from the Gray lot.

At the very threshold of this case we are met with the fact that the trial judge in these two cases, consolidated for trial, found in the Gray case that the Gray property was not benefited by its inclusion in the proposed district and that the district was formed contrary to law. In the Safeway case the court found that its property was benefited and properly incorporated within the district, notwithstanding that in the Gray case it had found the district was formed contrary to law. The issue as to invalid formation was not made in the Safeway case but it was made in the Gray case. In view of the disposition we feel we must make of the cases, it is not necessary to discuss the conflict, if such it may be called.

The two most vital questions which have arisen in each of these cases and which call for decision are (1) whether the property of either would be benefited by its inclusion in the district, and (2) whether a fair hearing was accorded by the council.

After reading the briefs and the record it seems crystal clear that the proponents of the district were motivated in setting the boundary lines of said district, not so much by using the yardstick of benefits, but by gerrymandering so as to get signers to the petition, who together owned 51 per cent of the total assessed valuation of the lands within the proposed district. For instance, it is clear that the proponents recognized that if the telephone company lot and building were included, it could and would block the project as the assessed valuation thereof is $1,561,230 while the total assessed valuation of the property within the proposed district is $2,782,640.

The Parking District Law of 1951, in effect at the time here involved, provides that "[a]ny portion of a city may be formed into a parking district . . ." (§ 35107), that "[a]ny

territory included within a parking district formed pursuant to this part [the Act] shall not be included within any other parking district or any vehicle parking district'' (§ 35111).

When a petition has been filed and checked, as was the case here, the law requires that the legislative body shall either approve the petition or reject it. If it approves the petition, as was done in the instant case, it shall direct the city engineer or other competent person to make and file a report setting forth certain facts. (See § 35257.) The time and place of the hearing thereon was duly set for December 19, 1955.

Section 35262 of the Streets and Highways Code provides for the filing of protests to the formation or inclusion of property within the district. Pursuant to said section, Safeway, Gray, and others filed protests which were read at the adjourned hearing held on January 3, 1956. Safeway's protest set forth the following allegations:

1. The Safeway property is provided with a total of 119 parking spaces, or 3.2 spaces per 500 square feet of store building space.

2. Parking surveys showed that to accommodate the maximum peak traffic at the Safeway Store only 71 parking spaces were required.

3. Formation of the district would be a detriment to Safeway competitively since its economic advantage over its competitors on Burlingame Avenue would be eliminated and yet Safeway would be required to pay a part of the cost to benefit its competitors and to its own prejudice.

The Gray protest was on the grounds, among others: (1) that the public interest, convenience, and necessity were not being properly served and that the plan was unfair and inequitable in that ''the boundaries of the proposed district exclude without apparent reason commercial properties which would apparently benefit as much as those included. . . . As a result, the boundaries are discriminatory as to those properties which are included in the proposed districts . . .''; and consequently the ''gerrymandering perimeter of the proposed district is based not on true benefit, but on capricious endeavor to eliminate opponents of the plan''; (2) that the inclusion of the property was beyond the power of the city council because it could in no way benefit, being residential property; (3) that the property has ample parking facilities of its own for its tenants; . . . (6) that the inclusion of the lot will serve no public use, access to it being by way of an alley of which the public is not aware and that it will provide only a limited

convenience for the personal use and enjoyment of owners or operators of commercial properties immediately adjacent to it; (7) that the inclusion of the lot will burden the entire district with a heavy cost but the benefit will accrue only to a small number of commercial properties.

The court found that Mr. Taylor, an official of Pacific Telephone and Telegraph, while a member of the Citizens' Committee, opposed the inclusion of the telephone property in the district and the council believed that if that property had been included the Telephone Company would not have signed the petition for the formation of the district because of the high assessed value of the exchange equipment and that consequently the petition would not have been supported by the names of more than 51 per cent of the owners of the property as required by the statute. It should also be noted at this point that the Telephone Company property forms an enclave (three sides) within the district.

Also excluded from the district, as above mentioned, was the Lucky Store property which is located on the southeast corner of El Camino Real and Chapin Avenue. It was excluded, according to testimony of council members, because within the past few years it had been assessed for the widening of Chapin Avenue.

Section 35268 of the Streets and Highways Code provides as follows: "At the hearing the legislative body may alter the boundaries of the proposed district as it finds to be proper and advisable and shall define and establish the boundaries, but the legislative body shall not modify the boundaries *so as to include any territory which will not in its judgment be benefited by the proposed project*, and *no territory shall be excluded from the proposed district which will in the judgment of the legislative body be benefited by* the proposed project." (Emphasis added.) We believe that there are two things that should be noted about this statute. First of all, we have a compound sentence connected by the coordinating conjunction "and" (in line 7 of the statute above). This would indicate that the introductory prepositional phrase, "At the hearing," which is not set off from the rest of the sentence by a comma, belongs to that clause of which "legislative body" is the subject and not to the second clause of which "territory" is the subject of the passive verb "shall be excluded." Thus interpreted, what the statute means is that although at the hearing the legislative body cannot modify the proposed district to in-

clude property not benefited, it cannot, under any circumstance, exclude property which in its judgment will be benefited. The second thing to note is that the proscription against modification to include nonbenefited property applies only to such inclusion being made at the hearing, itself. The act is silent as to the inclusion of nonbenefited property in the original district as proposed. Another thing which might be noticed about the section is that its language is mandatory and not merely permissive.

We come then to the basic question with respect to the Safeway appeal, to wit: May property on which is located a retail food market, but the greater portion of which is legally obligated to be reserved for public parking, be legally assessed to pay part of the cost of providing parking facilities, which, it is argued, are of no benefit to it, for competing retail stores in nearby areas.

At first blush, we cannot help but wonder how it was possible to find that Safeway could in any manner be benefited by being included in the proposed district and how the Lucky Store, with its parking, and the Telephone Company, by reason of its location, could be excluded from the district on the theory that neither was benefited by it and that Safeway was benefited. Safeway has a total of 119 parking spaces, but the maximum number of spaces utilized at any peak load does not exceed 71, which leaves a surplus of 48 spaces, likewise available to both its customers *and* the general public. Even the 71 spaces, at peak load, was not limited to a count of its customers but of the general public as well. Moreover, not only was Safeway legally bound to keep its lot free and open to the general public, but immediately adjoining was the city parking lot with all its space available. We have searched the record in vain for an answer as to how Safeway was or could be benefited. The three out of five councilmen who voted for the formation of the district do not enlighten us by any *facts*. To be sure they toured the proposed district, and saw the need for more parking spaces in that district quite some distance from the locality of Safeway. But what they heard and observed they did not place on the record. What possible benefit was there to Safeway to have additional parking spaces provided at a distance from its own parking lot? When people shop they want to park nearby and not several blocks away. The city's suggestion that if Safeway should cease to use its property as a grocery it would revert to the status of ''apartment'' zoning and it might then have need for district parking

is of no avail. The short answer is that the ordinances of Burlingame require that new construction must provide on the premises the necessary off-street parking.

■ What is meant by "benefit" is well stated by our Supreme Court in *Spring Street Co.* v. *City of Los Angeles* (1915), 170 Cal. 24, 30 [148 P. 217, L.R.A. 1918E 197], in these words: "That the return to the property owner by way of benefit is, under our system of government, the basic foundation upon which this right [to levy special assessments] rests, becomes apparent from the consideration that if we are not able to say that the owner for the specific charge imposed is compensated by the increased value of the property, then most manifestly we have a special tax upon a minority of the property owners, which tax is for the benefit of the public and which tax is special, unequal, and un-uniform.

"Therefore, the compensating benefit to the property owner is the warrant, and the sole warrant, for the legislature itself to impose the burdens of these special assessments." Respondent argues that the above case is authority only for the rule that an assessment is invalid where it is defective on its face; but, it is plain that what made the assessment defective on its face was the failure of the city to assess in proportion to benefits and, consequently, the above statement would appear to be more than mere dictum.

■ The conclusion to be reached, therefore, is that, even though the Parking District Law of 1951 does not expressly require that property included within the original district as proposed be benefited, that it must nevertheless be benefited by the district or no assessment can be made. And if no assessment can be made, it follows that the property should not be included in the district.

On the theory that there was substantial evidence introduced at the hearings before the council that benefits would or could be expected to accrue to said property by reason of the establishment of said parking district and the improvements to be constructed thereon, the trial court concluded that the Safeway property was legally and validly included within the district. On the other hand, our review of the record does not disclose any benefit at all, but on the contrary, only a detriment. Whether or not the property would be benefited has to be decided solely on the basis of the record before the council.

■ The rule is that set forth in 2 California Jurisprudence 2d 386 which is: "The review of the action of an administra-

tive agency exercising judicial powers is limited to a consideration of the record made before the agency."

■ That the City Council of Burlingame was exercising judicial powers in passing on benefits, see *Imperial Water Co. v. Board of Supervisors* (1912), 162 Cal. 14, where the court at pages 17 and 18 [120 P. 780] said: "... the mere creation of a district of this character [an irrigation district] is a legislative act. [Citations.] The legislature may either create such corporations itself by a statute passed without any formal notice or hearing, or it may delegate the power to some local board. [Citations.] It does not follow, however, that where the legislature delegates such power to a local board and provides that it can be exercised only upon certain conditions and upon the ascertainment of certain facts by such board, after a notice and hearing to parties interested, that the proceeding thus authorized is not of a judicial character. ... In *Robinson* v. *Board*, 16 Cal. 208, the court says: 'It is sufficient if they are invested by the legislature with power to decide on the property or rights of the citizen. In making their decision they act judicially whatever may be their public character.' " Also in the above case, the court pointed out that the board in determining whether property was or was not benefited by the proposed district was deciding property rights.

■ The contention of the city that there is no evidence to support the Safeway protest is patently inaccurate. Safeway placed the sworn affidavit of one of its duly authorized officers into the record. The facts therein stated were not refuted by the city nor objection made thereto. ■ In *Tanzola* v. *De Rita* (1955), 45 Cal.2d 1, 10 [285 P.2d 897], the following rule was enunciated: "Affidavits are competent evidence where authorized by statute or where they are not objected to on proper grounds by the party against whom they are offered. [Citations.]"

■ The authorities are clear that this mandatory hearing on the individual protests is quasi-judicial in nature and must meet the constitutional standards for quasi-judicial hearings.

However, although the city urges that there was no duty on its part to introduce evidence of benefit at the hearing, it nevertheless contends that the record does show that the Safeway property would be benefited by the proposed district. In support of that contention it states that Ordinance Number 608, adopted October 17, 1955, provides that property within an assessment district is exempt from providing parking

spaces although new commercial property not within such district must provide parking facilities. They then state that Resolution Number 72-56, passed on August 20, 1956, five months after the hearings and enactment of the parking ordinances, and four months after the commencement of this action, ''merely interpreted the intent of the council in adopting Ordinance No. 608 that it should apply as well to variances for which commercial use was granted, as to property zoned for that purpose,'' and that this, then, constitutes a benefit to Safeway. It was this contention, apparently, upon which the trial court based its finding of benefit.

The resolution referred to and which was not requested by Safeway purported to specifically rescind and vacate all existing requirements that the public off-street parking be furnished by the owner of any parcel of land within any parking district as a condition to any variance permitting the commercial use of land classified for residential use. But the resolution, not being in existence at the time the suit was filed, was not received in evidence and therefore could not be considered as any evidence of benefit to Safeway, yet though recognizing this fact the city time and time again refers to it on this appeal. It is for that reason only that we have briefly discussed it.

We come next to the question whether a fair hearing was accorded by the council. True it is that the council received for the record the written protests of the protestants and heard their oral protests, but in addition the members of the council, either individually or collectively, viewed the locale and conferred with the petitioners or their representatives, thereby receiving so-called facts upon which they apparently relied in coming to their judgments. These so-called facts gleaned by them through observation and hearsay were not recited at all in the record, and consequently were unknown to the protestants and hence could not be met or overcome by them. Under those circumstances, can it be said that a fair hearing was had? We think not! As stated in *Miller & Lux* v. *Board of Supervisors* (1922), 189 Cal. 254 [208 P. 304], which was a case involving an irrigation assessment district, in which the plaintiff claimed that no evidence was introduced before the board affirmatively showing that its lands would be benefited by the proposed plan of irrigation, the court at page 270 held that ''[t]*he court is limited* in its proceedings to review the order of the board of supervisors *to the record* there

made'' (emphasis added) *and that in the absence of such evidence in the record, the order of the board would be annulled.*

In cases, such as this, the judgment of a councilman must be based on real facts and not on the conclusions of others, such as, for instance, the petitioners. Until such facts resting in the minds of the councilmen are presented in the record, the objectors have no means of knowing on what facts the judgment rests so as to enable them to controvert them. In the instant case the city relies, in the final analysis, not on the real facts showing a benefit to the Safeway property—of which there is none—but rather on the unknown factors which give rise to the judgment which were locked up in the minds of the councilmen and not disclosed in the council record. This does not afford fair play under American standards and is not according to the decisions.

Another contention of the appellant Safeway which probably is not now of importance, in view of the conclusion we have so far reached, is the question of the propriety of Attorney Wilson serving as the advocate of the proponents and the special attorney for the council. On that point the trial court, in its memorandum opinion, not carried into its findings of fact, said: ''The contention of the petitioners that they did not receive a fair hearing on their protest because of the conflict of interest of the special counsel employed by the City for the purpose of creating the district is a serious one. It is undisputed that Ernest Wilson, the special attorney for the city in this matter, had a proprietary interest in real property located within the proposed district. It is also quite clear that he did not reveal this interest at any of the public hearings held in connection with these proceedings. Certainly it would have been far better to disclose this fact at an open hearing in order to permit all those concerned to have full knowledge of the facts and to avoid the accusation that is being made here.''

We not only concur in that statement, but we regard Mr. Wilson's action as being a flagrant violation of legal ethics.

There remains for consideration the question whether the Safeway lot may be classed as a parking *district* in view of the fact that it is obligated to accord all the privileges of its parking lot to the citizens of Burlingame, as does the City Parking District.

It is interesting to note that the statute (§ 35111) as originally enacted read as follows: ''No territory included within a parking district formed under the provisions of this act shall

be included within any other *such* parking district or any vehicle parking district *formed under any law of this State.*" (Emphasis added.)

As a result of the codification in 1953 the italicized words and phrases were deleted. With respect thereto counsel for Safeway say: "It is our belief that this change in codification indicates an intent on the part of the legislature to broaden the scope of the term. So construed and interpreted, the prohibition of the section encompasses any attempt to include a parking facility constructed and maintained pursuant to legal mandate and devoted in whole or in part to public use, within a district subsequently formed under the provisions of the Parking District Law of 1951. If this be a correct interpretation, then the Safeway parking area cannot legally be included within the proposed district."

As the holding in the Safeway case must be reversed on the basis that there was no showing of benefit and the holding in the Gray case affirmed, it is unnecessary for us to discuss the point raised.

From what has so far been said concerning the Safeway appeal there is little that calls for discussion in the Gray case. Because the statutes were not complied with, the lower court properly held the resolutions and ordinance of the City Council of Burlingame forming the parking districts were invalid, void, and of no effect.

Illustrative of the council's failures at compliance are the following examples:

In May 1955, the firm of Hahn, Wise and Associates was retained by the city to make a report and recommendations for the formation of the district as required by section 35257 of the Streets and Highways Code. Said section requires the council to direct a report to be made showing the estimate of costs of acquisitions, improvements, incidental expenses, annual revenues from, and operating expenses of, the parking places, revenues from on-street parking meter funds, and the total assessed value of real property within the district. However, the petition for the district as originally proposed was not filed until September 28, 1955, certified by the clerk, and the signatures verified. It was approved on November 4, 1955, and Hahn, Wise and Associates' first report was then filed. The section above cited states: "The legislative body shall either approve the petition or reject it. *If it approves the petition, it shall direct* the city engineer or other competent person

to make and file with it a report showing. . . ." (Emphasis added.) That is, the action provided by said section is not to be taken until *after* the petition has been approved. Here, the engineers were retained by the city several months before the petition was filed. However, this is merely a technical objection.

More important is the fact that in violation of the statutes various pieces of property were excluded or included apparently without regard to benefit or nonbenefit. As has been seen from the foregoing discussion, the Safeway property was included when there was no evidence of benefit to it at all. The Pacific Telephone and Telegraph Company, surrounded on three sides by the proposed district, was excluded when there was in fact evidence to the effect that it would be benefited by said district. The Lucky Store property was excluded not because there was no finding of nonbenefit to that property but rather because it had been assessed within the last several years for the widening of Chapin Avenue. There is nothing in the code that would permit exclusions from the district on the basis of prior assessments. The district also included one lot on Chapin Avenue, not because in the judgment of the council it was believed it would be benefited, but rather because its owner asked to have the lot included within the district. There was evidence of other commercial properties having been excluded without regard to benefit. Although it is true that the boundary must end somewhere, such statement does not warrant the gerrymandering of borders to exclude those who might oppose the plan. The borders of the district should be fairly even and there must be an honest and sincere attempt to include within the district properties among which there is some equality of benefit.

Section 35108 of the Streets and Highways Code provides that the acquisition of property by eminent domain is authorized. Section 35251, subdivision (b), provides that a general description of the parking places proposed to be acquired shall be contained in the petition. In 1955, said section was amended to provide: "The parking places must be within the boundaries of the proposed district." It was on the basis of this amendment that the Gray property, or "Lot F" as it is called, was included within the proposed district, as it was to be acquired as a parking place. It is conceded that property is not benefited when it is taken by eminent domain. As we have concluded in the Safeway appeal, to be assessed property must be benefited. But unlike the Safeway property which was to be

included within the district for the purpose of assessment, Lot F was designated by the council for acquisition and not for assessment; therefore, it would seem to follow that the council concluded the property to be acquired as a parking lot need not be benefited. But section 35402.3 of the Streets and Highways Code provides as follows: "If at any time, either before or after issuing bonds, the legislative body so determines, *it may* at one time or from time to time, *eliminate, change or otherwise modify any of the proposed acquisitions and improvements. . . .*" (Emphasis added.)

The provision gives the authority to eliminate property designated for parking places from the "proposed acquisitions," but it does not provide for the elimination of such property from the proposed district itself. Therefore, unless such property is in fact benefited in the first instance, we may have a situation where nonbenefited property included within the proposed district for the purpose of acquisition is not acquired and yet remains within the district subject to assessment. The city argues that, should the above situation result, the owners of the property might either enforce acquisition of their property or be allowed to withdraw from the district, but it cites us to no authority for this argument and we could find none. Consequently, we must hold that property must either be benefited by its inclusion within the district or it may not be included. The Legislature apparently recognized the position in which the city in such an instance is placed because in 1957 it deleted the 1955 amendment to section 35251 and now property designated for acquisition need not be included within the proposed district.

Section 35268 provides: "*At the hearing* the legislative body may alter the boundaries of the proposed district. . . ." (Emphasis added.) However, before any hearing was held on the protests to the original resolution in this case, the council on December 19, 1955, adopted Resolution Number 96-55 of Intention to Make Changes and Modifications.

Finally, it is to be noted that the council adopted Resolution 22-56 to include within the proposed district the South of Howard area, which included several pieces of property zoned for residences. In including this area, the council provided for a large parking lot therein which lot was *not* provided for in the district as originally defined in Resolution 88-55. This area was of such substantial size as to be almost a parking district in itself. That is, it increased the original district in square

footage by 28.5 per cent, the cost of acquisitions by 21 per cent, and yet the assessed valuation by only 10 per cent which would result in a substantial increase of the assessments to the owners of the property in the district as originally proposed. The result is that a much larger district has been created than that originally proposed, and the statute requiring that the owners of real property of an assessed value of not less than 51 per cent of the total assessed value of all taxable property within the district sign the petition for formation of the district (§ 35250) has been evaded.

We conclude that the cumulative effect of the above failures to comply with either the letter or spirit of the statutes renders the whole proceeding purportedly taken thereunder void.

For the reasons indicated the judgment in the Gray case is affirmed and the judgment in the Safeway case is reversed.

Bray, P. J., and Wood (Fred B.), J., concurred.

The petition of respondents in Civ. No. 18239 and appellants in Civ. No. 18132 for a hearing by the Supreme Court was denied July 22, 1959.