Argued February 5, affirmed in part, reversed in part February 28,
petitions for rehearing denied March 26, 1968

## WING, EXECUTRIX ET AL, *Appellants, v.* CITY OF EUGENE, *Respondent.*

437 P. 2d 836

*Stanley R. Darling,* Eugene, argued the cause for appellants. With him on the briefs were Darling, Vonderheit, Hershner & Hunter, Eugene.

*Herman P. Hendershott,* City Attorney, Eugene, argued the cause for respondent. With him on the brief was Douglas G. Combs, Eugene.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, GOODWIN, DENECKE, HOLMAN and LANGTRY, Justices.

LANGTRY, J. (Pro Tempore).

Plaintiffs have appealed from a circuit court decree dismissing writs of review. The decree upheld the proceedings of Eugene's city council in levying special assessments for an off-street parking facility in downtown Eugene. The area determined to be specially benefited consists of several blocks and half blocks surrounding the proposed facility.

The special assessments are levied in four zones, the closest paying the heaviest and the farthest the least assessment. Plaintiff's property is in the outer zone. Estimated cost of the facility is two million dollars. Within the assessed area are several parcels which the council found to be public parking lots operated for profit. They were not required to pay special assessments. After the proposed assessments were made, plaintiffs and another owner, whose property was described as the Fisk property, brought separate circuit court writs of review seeking to void the proposed assessments. Further consideration by the council resulted in the Fisk property being given a substantially reduced assessment proportionate to parts of it found to be used as parking lots for the public, and Fisk dropped its court proceeding.

Initially, notice of the proposed improvement and assessment required by statute was given. When the Fisk property's proposed assessment was reduced no additional notices were given. The result of Fisk's reduction is that other proposed assessments will rise substantially in proportion.

Authority for parking improvement facilities is in ORS 223.805 through 223.845, originally enacted by the 1949 Legislature and subsequently amended several times. Procedure for levying assessments for local improvements is in ORS 223.387 through 223.399. Reassessment procedure is in ORS 223.405 through 223.485. ORS 223.401 provides that review of the council's action may be by writ of review under ORS 34.010 to 34.100. ORS 34.020 provides:

"Any party to any process or proceeding before or by any inferior court, officer, or tribunal may have the decision or determination thereof reviewed for errors * * * and not otherwise * * *."

ORS 34.040 provides that the writ shall be allowed in all cases where the functions appear to have been exercised erroneously or arbitrarily, or where jurisdiction is exceeded to the injury of some substantial right of the plaintiff.

Pursuant to the original writ and its supplements, the proceedings were returned in three parts. Included were records showing proceedings leading to the council's action, the hearings, and the determination.

Plaintiffs assign a number of errors, which in substance allege that the trial court erred in dismissing the writs because: (1) the council acted in excess of its authority when it exempted commercial public park-

ing lots from the assessment; (2) the exemption and procedures were unconstitutional; (3) reduction of the assessment on the Fisk property was erroneous; (4) the council acted arbitrarily; and (5) the court did not allow plaintiffs to introduce evidence outside the city's returns to the writs to support plaintiffs' contentions of arbitrariness and unconstitutional procedure.

■ With reference to the fifth assignment, the trial court was correct in refusing to allow additional evidence. In *Silva v. State,* 243 Or 187, 412 P2d 375 (March 1966), we held that a writ of review must be tried on the record brought from the inferior court. This decision leaves unchanged, after a 1965 amendment to the writ of review statutes, the practice in this regard. See *Killingsworth v. Portland,* 93 Or 525, 184 P 248 (1919).

The first, second, and fourth assignments of error will be considered together. Under ORS 223.810 and 223.815, a city may establish parking facilities and acquire property therefor. Condemnation of property already being used for public parking purposes is prohibited if the owner resists. Broad powers conferred by the statutes allow planning, construction, financing and method of operation. Financing methods include:

> "Special or benefit assessments * * * such assessment to be levied against property benefited in proportion to the benefit derived * * *." ORS 223.825 (2).

Parking fees and other facility income are included as a financing method. ORS 223.845 states, *inter alia,* that the city may provide, and if revenue bonds are issued to finance it it must provide, that the revenues from the facility shall be disbursed for some or all of:

payment of interest and retirement of bonds; payment of operating expenses; creation of a reserve account for replacements; payment in lieu of taxes; and "Reimbursement of owners of real property for special assessments paid by them * * *."

ORS 223.399 says that the city council may by ordinance provide additional assessment procedural requirements. The city before proceeding passed procedural ordinances. Sections 28.66-9 to 28.66-30 of the city code. Therein it was enacted that an existing public parking lot operated for profit within the assessed area is not deemed benefited and therefore exempted from assessment. Section 28.66-11(c) provides in the event such lot were to later change its land use it would at such time be proportionately specially assessed and other assessments reduced accordingly.

■ A levy of a special assessment for a local improvement does not offend the due process clause of the Fourteenth Amendment to the United States Constitution unless it is palpably arbitrary. Only where there is a manifest or unreasonable discrimination in fixing the benefits between parcels of property can the legislative (council's) determination be said to contravene the equal protection clause of the United States Constitution. *Kansas City Ry. v. Road District,* 266 US 379, 386, 45 S Ct 136, 69 L Ed 335 (1924); *Houck v. Little River District,* 239 US 254, 36 S Ct 58, 60 L Ed 266 (1915); *Valley Farms Co. v. Westchester,* 261 US 155, 43 S Ct 261, 67 L Ed 585 (1923). These cases hold that the levying body has a wide discretion to determine whether particular property is specially benefited and may lay benefit assessments in proportion to position, frontage, area, market values or to benefits estimated by commissioners. These cases are

repeatedly cited and followed in state courts, including this one. See *Stanley v. City of Salem,* 247 Or 60, 427 P2d 406 (1967). In *Northern Pac. Ry. Co. v. J. Day Irr. Dist.,* 106 Or 140, 211 P 781 (1923), it was held, with reference to equal protection provisions of the United States and Oregon Constitutions:

> "* * * When local improvements may be deemed to result in special benefits, a further classification may be made and special assessments imposed accordingly, but even in such case there is no requirement of the Federal Constitution that for every payment there must be an equal benefit * * * [the assessment will be upheld] unless the exaction is a flagrant abuse, and * * * is mere confiscation of particular property * * *." Quoting from *Houck v. Little River District,* supra, 239 US at 265.

Generally, to the same effect, see *Raz et al v. City of Portland et al,* 226 Or 515, 360 P2d 549 (1961); *Northern Pacific Terminal Co. v. City of Portland,* 80 F2d 738 (9th Cir 1935), cert. den., 297 US 716, 56 S Ct 591, 80 L Ed 1002 (1936); *Ladd v. Gambell,* 35 Or 393, 59 P 113 (1899); *State of Oregon v. Pirkey,* 203 Or 697, 702-703, 281 P2d 698 (1955). "Where * * * there is such a legislative declaration as this, as to what lands within the district will be benefited * * *," the law is so well settled that extended discussion is not justified. *Branson v. Bush,* 251 US 182, 40 S Ct 113, 64 L Ed 215 (quoted in *Northern Pacific Terminal Co. v. City of Portland,* supra). The court applied the rules recited supra.

*Hauke v. Ten Brook et al,* 122 Or 485, 259 P 908 (1927), strongly relied upon by plaintiffs for the proposition that there must be equality in levying special assessments, is not in point for there the challenge was

to the city seeking to excuse some, but not all, special assessments. The assessments had long since been levied and the improvements constructed. Some assessments presumably had been paid before a disastrous fire struck the city, prompting the city government to thus try to help some who were hurt in the fire with a foregiveness amendment to the city charter for "any or all" presently owed assessments totaling under $150,000. It is clear the subject of that decision was not the levy of special assessments.

■ ORS 223.825(2) quoted supra, does not specifically give the city authority to exempt any property in the district; consequently, plaintiffs assert the exemption of public parking lots is without authority. But the statute does require assessments levied to be against property benefited "in proportion to the benefits derived." If the city council determines that particular property or properties, by reason of use, derive no benefit, the statutory language indicates that it cannot be assessed. Saying it cannot be assessed is equivalent to saying that it is exempt from assessment, and, in such event, the authority for the exemption stems from the statute.

■■ Plaintiffs argue that the "exemption" if it is a classification is unauthorized and unreasonable. The city ordinance prohibition of assessing existing public parking lots rests not so much on their being a class as that they simply cannot be assessed because they receive no benefit. If they are construed as being classified, however, it is only when such is arbitrary or unreasonable that the courts will strike down the attempted classification. If there is a rational distinction between groups, if the classification has a reasonable relationship to the purpose for which it is made, it is valid. Here, there is. *State of Oregon v.*

*Pirkey,* supra; *Kliks et al v. Dalles City et al,* 216 Or 160, 335 P2d 366 (1959). Kliks, quoting from *American Aniline Products, Inc. v. City of Lock Haven,* 288 Pa 420, 135 At 726 (1927) states: classifications based "upon a particular business or use for a special purpose will not, *without more,* justify classification." (Emphasis supplied.) There is more than a particular use classification, if it is one, by the council here. The council had declared by ordinance that it desired to encourage use of land for public parking in the area, it found "no benefit," and, further, it provided that if the use later changes to one other than public parking, then it must be proportionately assessed because then it would be benefited.

No evidence is needed to support the proposition that a two million dollar parking lot built near a presently operated commercial parking lot is of no benefit to the latter's profit prospects. This obviously was the reasoning of the California court in *Safeway Stores, Inc. v. City of Burlingame,* 170 Cal App2d 637, 339 P2d 933 (1959), where a Safeway store had a parking lot capable of handling 119 vehicles and for its own purposes used only 71 spaces at its peak need. The lot was, and was required to be, available to the public. The city sought to assess it for a public parking facility in the general area. It was held not benefited and the attempted assessment voided. This was held even though the court said Safeway might at some future time abandon its lot to some other use, because any new construction (a new use) under the city's code would be required to provide off-street parking. The court said that though the state authorizing statute did not expressly require property in the district if assessed to be benefited it must nevertheless be benefited or no assessment can be made.

This precedent is sound and closer in point than any other that has been cited by counsel or found by the court.

The type and need of the improvement and the scope of authority for it provided by statute are substantially different and broader than with local improvements financed by special assessments in the past. The impact of motor vehicles as numerous as people upon streets that are unable to cope with them has caused traffic congestion threatening to choke off the very life of valuable business areas. The "flight to the suburbs" causes serious public concern about economic waste involved in duplicated land use and its wide-ranging attendant problems. Courts should recognize the public policy involved where innovations seek to meet such problems. Plaintiff asserts that the city council has no authority to base its decisions in this regard upon public policy. Such an assertion is a narrow and unwarranted view of the function of the representatives of the city electors. *Hauke v. Ten Brook et al,* supra, urged by plaintiff for the proposition that the city cannot consider economic benefit to the community in assessment classification matters simply is not in point.

The intent of the enabling statutes, obviously, is to give cities the opportunity and the tools with which to attempt to meet the problems. The general rules by which such authority is construed apply, but particular restrictive constructions which were properly applied to other types of improvements may not apply here, when viewed in the light of the broad authority conferred and the purpose sought to be accomplished.

This is a case of first impression in Oregon, but similar statutes have been tested in other jurisdictions and usually with a broad interpretation of the city's

authority. Some of the cases are: *City of Whittier v. Dixon,* 24 Cal2d 664, 151 P2d 5, 153 ALR 956 (1944); *Crampton v. City of Royal Oak,* 362 Mich 503, 108 NW 2d 16 (1961); *Schnack v. City & County,* 41 Haw 219 (1955); *Kissane v. City of Anchorage,* 159 F Supp 733 (Alaska 1958); *Safeway Stores, Inc. v. City of Burlingame,* supra; *Jenner v. City Council,* 164 Cal App2d 490, 331 P2d 176 (1958); *Jeffery v. City of Salinas,* 232 Cal2d 29, 42 Cal Rptr 486 (1965). In *Royal Oak* the Michigan court said:

> "* * * [C]onsideration must be given to the purpose to be attained by the public improvement sought. In some instances a fair and equitable apportionment of the cost * * * may be accomplished by following a method not at all applicable under other circumstances * * *." 362 Mich at 526.

The method of assessment has been struck down where it appears arbitrary and unrelated to benefits received. *North Pacific Ry. Co. v. City of Grand Forks,* 73 NW2d 348 (ND 1955).

■ The assessments in the instant case are heavy in relation to the value of the property assessed. Plaintiff argues the cost should be more widely spread— there is a wider field of benefit. This is a matter for the city council, acting in its representative and legislative capacity, to consider rather than the court. More than one-half the owners of property in the assessment district, in numbers and value of land, petitioned the council to initiate this project. The enabling ordinance provides for repaying the assessees from profits of the facility, and the extensive reports to the council from its technical advisers estimate that if the assessments are bonded over the 20 years allowable the full amount of the assessment will never have to be paid,

and eventually the assessees will be repaid. These facts and opinions, regardless of whether they bring comfort to the petitioner or are too optimistic, do not indicate abuse of authority. Retail merchants buy expensive property for business buildings and in order to handle the traffic and meet competition often devote only part of it to store occupancy and as much as half to off-street parking for customers. In light of this, it is not unreasonable that the businesses of a downtown core area, being without adequate vehicle parking, in order to survive and preserve property values, join together through their local government to construct parking space, even if its costs are heavy.

Inevitably, some land uses will be more benefited than others, and some presently not at all. But if the city council's plan for assessing the cost reasonably takes into consideration these differences, a court will not strike it down because it is not exactly fitted to the prospective benefit of each. The special assessments are not bound by "a system of delusive exactness." *Schnack v. City & County,* supra. "* * * It is not necessary to refine the concept of benefit so as to make it serve equally each of the lots in the area * * *." *Raz et al v. City of Portland et al,* 226 Or 515, 521, 360 P2d 549 (1961).

Plaintiff argues that present use of property "has no bearing on the question of assessable benefit." Such unequivocal statements are made in some cases, such as *Chapman v. City of Albuquerque,* 65 NM 228, 335 P2d 558 (1959), where the improvements were other than a parking facility, and it was held some property the city had decided was not benefited would be benefited in the future and must be assessed.

■ The proper emphasis is in the many cases which hold that in determining whether a property is bene-

fited the city is not to look at present use alone. Thus, in *Stanley v. City of Salem,* 84 Adv Sh at 798, 427 P2d at 409, Mr. Justice DENECKE said:

"* * * In determining whether an enhancement of value has occurred [from the improvement] the inquiry cannot be restricted to present use. The test must be, would the value be enhanced if the property were put to its highest and best use? [Citing cases.]"

Present use might be one of several highest and best uses, relatively all equal. Several uses might enter into consideration, all reasonable and all varying in the value they may impart to the property. Each respectively may be greatly or minimally benefited by the local improvement. If uses present or probable are not arbitrarily and unreasonably excluded from consideration, the courts will not strike down the city council's determination in the absence of fraud or palpable abuse. In this case, the records show the council heard the evidence offered. It had its city manager's report and a study by a special consulting firm. It did consider probable uses other than present use, and it was decided that while it would exempt present commercial parking lots, if they changed use they then would be assessed.

Some determinations of the council as to whether certain parking lots are actually used or not used for public parking for profit were, to say the least, arguable, but there was evidence to support the determinations made.

"* * * Where reasonable men differ, the determination of the assessing officer will be upheld." 14 McQuillin, Municipal Corporations § 38.186 (3d ed 1950, Cum Supp 1966 at p. 78). Quoted with approval in *Stanley v. City of Salem,* 84 Adv Sh at 796, 427 P2d at 408.

In *Crampton v. City of Royal Oak,* supra, the court said:

> "[present use] \* \* \* does not establish a fixed criterion for determining whether benefits are received \* \* \* the inquiry is not limited to present use \* \* \* but \* \* \* to uses to which it may be put, including such as may be rendered more feasible by the carrying out of the project \* \* \*."① 362 Mich at 516-517.

Assignments of error 1, 2, and 4 have been thoroughly examined in light of the transcript and briefs and no error is found. Except as decided under assignment 3, infra, plaintiffs had a fair opportunity to be heard, and the council's determinations were reasonable and based upon extensive expert advice and evidence submitted by interested parties, including plaintiffs.

■ The third assignment of error is that the city council erred in failing to follow procedural requirements when it reduced the Fisk assessment. Ordinance 14615 levied an assessment of $186,518 against this property and Ordinance 14730, after reciting that it was incorrectly assessed in Ordinance 14615, reduced it to $101,007.31. As a result of this, as already noted, the Fisk court action was dropped. Other assessed property, as a result, will have assessments increased about four percent. The reason for the Fisk reduction

---

① It is argued by plaintiff that inasmuch as present commercial parking lots are "exempt" but must be assessed in the future if they change use, the city's ordinance should also provide that if a present use comes under the assessment, pays it, and a few years later converts to a commercial parking lot, it should get its payments in part returned. This reasoning in *Royal Oak* as to feasibility of a change in use as a result of the building of the facility is a partial answer, and what has been said, supra, about the plan not being required to exactly fit present or future benefits is also an answer.

was a finding that part of this property was being used as a commercial parking lot and should not have been assessed.

The city claims this was a mere error which could be corrected without new procedural notices, but plaintiffs claim it was a reassessment requiring the procedures of ORS 223.405 through ORS 223.485. ORS 223.410 provides:

> "Whenever all or part of any assessment for improvements was or is declared * * * set aside for any reason * * * or when the council is in doubt as to the validity of all or part of any such assessment by reason of such defects in procedure, the council may * * * make a new assessment or reassessment with respect to all or part * * *."

Following sections require that if a reassessment is to be made, the proposal shall be filed in the recorder's office and he shall publish and serve specified notices of time and place for a hearing on objections. These provisions are also in the city's ordinances. Such notices were not given in the proceedings resulting in the Fisk assessment reduction.

The city argues that the notices are required if an assessment is to be increased, and here it was to be decreased. This is correct as to Fisk, but the opposite is true with reference to all the others. The plain intention of the statute is to require notice so any interested property owner adversely affected may have an opportunity to be heard.

> "The notice and hearing required under the statute is necessary to confer jurisdiction on the municipality and must be strictly observed." Rhyne, Municipal Law 723-724, § 29-6 (1957).

Here, no mere clerical or arithmetical error was involved; the council exercised judgment upon facts.

The statutory notices were required; the Fisk reduction proceedings are consequently invalid and will require new proceedings if pursued further. Judgment of the trial court is affirmed in all other respects.

Affirmed in part; reversed in part.